MAYOR, ETC., OF CITY OF GUTHRIE V. TERRITORY *ex rel. Losey.*

[*Opinion  Filed Sept.  19,  1892.*]

1.  MUNICIPAL CORPORATIONS—*Corporate Existence-* -Provisional municipal organizations, made in Oklahoma before the act of congress approved May 2, 1890, providing for Oklahoma a Territorial government, had no legal existence, and could not bind themselves or others by their contracts.

2.  CONTRACTS—*Enforcement of*—While the contracts of such a provisional municipal government cannot be enforced as contracts either against the contracting parties or their successors, the legislature has power to provide for the payment by the village corporation which succeeds such provisional government of the debts and liabilities contracted by the latter.

3.  SPECIAL LEGISLATION—*Charter of City*—Such provision enacted by the legislature is not special legislation, within 24 St. at Large, c. 818, which prohibits the legislatures of Territories from passing any local or special laws, incorporating or amending the charter of any city, town or village, or granting to any city or town any special or exclusive privilege, immunity or franchise.

4.  MUNICIPAL INDEBTEDNESS—*Limit of Same*—24 St. at Large, c. 818 § 4, providing that no municipal corporation shall become indebted in excess of 4 per cent. of the value of the taxable property, is a limit on the municipal authorities, but does not limit the power of the legislature to levy assessments on the property within the corporation by proper legislation.

5.  PROPERTY OF VILLAGE—*City Successor*—A city which succeeds to the rights, franchises and property of a village is bound by all its contracts and obligations, and hence the fact that the village corporation has changed into a city since the liability of the village for the debts of the provisional organization was fixed by the legislature does not relieve the city from the same liability.

6.  COMPENSATION OF REFEREES—*Mandamus*—Where the legislature provides that the court shall determine the compensation due referees for adjudging claims against a city, and shall order a warrant drawn by the city for the payment of such compensation, if the city does not, at the time the compensation is directed, make objection before the court to the amount awarded, it cannot afterwards question the correctness of the amount or the value of the services rendered, and mandamus will lie to compel payment if it is refused.

*Appeal from the District Court of Logan County, Hon. E. B. Green, Judge.*

Mandamus by the Territory of Oklahoma on the relation of Marquis D. Losey against the Mayor and common council of the City of Guthrie, to compel defendants to issue a warrant for the payment of relator's claim for money due him from defendants in return for duties performed as referee under direction of the court in fixing the amount of certain claims against the city. Defendants made return to relator's alternative writ of mandamus by way of demurrer, which was overruled, and defendants answered. Relator's demurrer to the answer was sustained, judgment rendered for relator and a peremptory writ issued, commanding defendants to issue the warrant. From this judgment defendants appeal. Affirmed.

*Bierer & Cotteral*, for appellants.

*H. S. Cunningham, H. F. Asp* and *Saml. S. Overstreet*, for appellee.

The opinion of the court was delivered by

BURFORD, J : On the 22d day of April, 1889, at the opening of the Oklahoma country to settlement and occupancy, a large number of people settled for townsite purposes upon the lands now occupied by the city of Guthrie. The act of congress approved March 2, 1889 contains a provision that no entry of lands for townsite purposes shall embrace more than 320 acres in any one entry. To avoid this inhibition and seggregate more lands for the purpose of trade and business, four separate entries were made of these lands, consisting of 320 acres each, and were severally denominated Guthrie, East Guthrie, Capitol Hill and West Guthrie. The townsite settlers and occupants of each of these subdivisions organized what was called provisional Governments, under charters adopted by the people at public meetings held for such purposes, and each se-

lected municipal officers, made public improvements, graded streets, erected buildings, constructed bridges, adopted laws and ordinances and arrested, punished and imprisoned violators of such ordinances. These provisional governments assumed and exercised all the powers, functions and authority of legally constituted municipal corporations and continued to exercise the same until the month of August A. D. 1890, when they were consolidated and organized as a village corporation under and pursuant to the laws of Nebraska, as adopted and extended over said Territory by the Act of Congress approved May 2, 1890, providing a Territorial government for the Territory of Oklahoma, and said village of Guthrie succeeded to all the improvements, property, books and documents of the several provisional governments.

During the existence of the several provisional governments they each contracted and created in various ways pertaining to their municipal affairs, certain debts. which remained unpaid at the time the said provisional governments were converted into a legally constituted municipal corporation.

The village of Guthrie continued her corporate existence until after the adjournment of the First Territorial legislature, when she organized as a city of the first class under the laws of Oklahoma, and has ever since remained such, with a mayor, common council and police officers, exercising all the functions and powers of a municipal corporation, and is composed of the same people, and embraces the same territory as the original provisional governments of Guthrie, East Guthrie, Capitol Hill and West Guthrie, and has succeeded to all their property and improvements and has adopted and appropriated the same.

During the session of the First legislature, and after the village of Guthrie had been organized, an Act

was passed, entitled "An Act for the Purpose of Pro-
viding for the Allowance and Payment of the Indebted-
ness Heretofore Created by the People and Cities of
Guthrie, East Guthrie, West Guthrie and Capitol Hill,
now Consolidated into the Village of Guthrie". (Chap.
14, Art. I Statute of Oklahoma.)

This act empowers the district judge of Logan coun-
ty to appoint three disinterested persons, to act as
referees to inquire into and pass upon all claims and
demands of every character, heretofore issued by the
four provisional governments for all purposes.

"The holders of claims are requested to present them
to the referees, supported by affidavit that the claims
are *bona fide* ard wire for money advanced, materials
furnished or labor peformed for the benefit of the city
requiring the same, and the referees are authorized to
hear evidence if they deem necessary. The referees
are required to give notice of the time for presentation
of claims and after thirty days all demands not pre-
sented are barred."

Section 4 of said Act provides:

"That after the commission or referees shall have
passed upon and allowed any and all claims mentioned
in this act, they shall make a report to the district court
of same, showing the names and amounts allowed by
them, and also all claims and the names of persons and
amounts disallowed by them, for approval or disapproval
of the district judge. And all claims allowed and ap-
proved by the district judge shall be certified to the
mayor and council of the village of Guthrie, who are
hereby authorized and directed to issue warrants upon
the village, and payable by the villagers to the holders
and owners, payable in installments, each of the amounts
to be in one, two, three, four and five years, to bear
interest at the rate of six per cent per annum from the
date of the allowance by the commission or referees;
and said mayor and council of the village of Guthrie
shall levy a tax upon the property of the residents of
said village to pay the warrants herein referred to, levy-
ing same upon each subdivision heretofore constituting

Guthrie, East Guthrie, West Guthrie, and Capitol Hill, according to the amount of indebtedness created by the city councils, the mayors and school boards, heretofore acting for and in behalf of the people resident of said cities.   Each of said cities to be liable for and taxable under this act for the amount of indebtedness created. by them."

Section 5 is as follows:

"That said commission or referees shall be allowed such compensation as the district judge may allow them. for the services to be performed by them under this act, and the village of Guthrie shall pay the same to the said commissioners or referees, upon the order of the district judge."

Acting under the provisions of this statute, the district judge of Logan county appointed the relator with two others, referees or commissioners, and they qualified and performed the duties required of them in said act, and made their report to the district court.   Thereupon the court ordered that the relator be allowed the sum of $425.00 for his services as such referee, and ordered that the council issue warrants of the city of Guthrie therefor.   This order was presented to the council in session and a demand made for the warrant, which was refused.

The relator applied to the district court of Logan county for an alternative writ of mandate, commanding. the city to issue said warrant, or show cause why the same should not be done.

The city council made their return to this writ by way of demurrer, and assigned as cause for demurrer,.

"That the court had no jurisdiction to grant the relief prayed for.

"That the act upon which the claim was based was unconstitutional and in conflict with the organic act of Oklahoma.

"That the petition does not state facts to entitle the relator to the relief prayed for."

This demurrer was overruled and exception saved.

The city then answered in eleven paragraphs, the first of which was a general denial of the allegations contained in the petition.

The relator demurred to the several answers, and the demurrer was sustained as to all of the answers except the first, to which it was overruled. This paragraph was afterwards stricken out, for the reason that the defendant refused to verify the same.

The court then rendered judgment for the relator, and issued a peremptory writ of mandamus commanding the defendant to issue said warrant.

From this judgment the city appeals; and assigns as error the overruling of her demurrer to the petition, and the sustaining of the relator's demurrer to her several answers.

Some of the questions presented by this record are quite novel and difficult, and of no little importance. The subjects have all been treated ably and exhaustively by counsel on both sides, the several briefs exhibiting evidences of great research and careful study.

The first question to be determined in this controversy is as to the legal status or character of the so-called provisional governments.

It is a well established rule of law that before there can be a *de facto* municipal corporation there must be some authority for a *de jure* corporation. A *de facto* corporation cannot exist where there is no law authorizing a *de jure* corporation. (*Norton v. Shelby Co.*, 118 U. S. 426; *Evenson et al. v. Ellingston et al.*, 67 Wis. 634.)

"The proposition which lies at the foundation of the law of corporations of this country is that here all corporations, public and private, exist and can only exist by virtue of express legislation enactment, creating or authorizing the creation or existence of the corporate

body.    Legislative sanction is with us absolutely essential to lawful corporate existence."    (Dillon, Municipal Corp. § 37.)

Was there any legislative sanction to the existence of municipal corporations prior to the act of congress, approved May 2, 1890?   We are unable to find any such authority.   These provisional governments grew out of a necessity made by the absence of legal authority.   They were aggregations of people associated together for purposes of mutual benefit and protection. Without any statute law, they became a law unto themselves and adopted the forms of law and government common among civilized people, and enforced their authority by the power of public sentiment.    They had no legal existence; they were nonentities; they could not bind themselves by contracts, or bind any one else. They were morally bound to make just recompense for that which they received in money, labor or materials, but no such obligations could be enforced against them.

The organic act furnished them a sovereign civil government, and supplied the authority for constituting *de jure* municipal corporations, then they became and were *de facto* corporations until such time as they complied with the laws relating to incorporating villages, and became a *de jure* corporation.

The *de jure* corporation having succeeded to all the property, public improvements, people and territory of the provisional governments, has the legislature power to compel the *de jure* government to pay the debts of its illegal unauthorized predecessors?

It is a fundamental rule that a legislature may by a retroactive statute, cure or ratify any defect which it might have in the first instance authorized· unless prohibited by some constitutional or organic provision. Or it may, by a retroactive statute, legalize any proceedings that it might have authorized.   (Wade on Re-

troactive Laws §§ 254 to 257 and authorities cited.)

It can hardly be contended that the legislature could not have authorized the creation of the debts of the provisional government had there been a legislature prior to their organization. That is, it is not shown that the debts contracted, or any of them, are of a class that a *de jure* municipal corporation might not have been authorized to contract. Ratification is merely the act of confering authority retrospectively. And this power must necessarily be measured by the constitutional provisions in force at the date of the curative act, where it is not denied by the constitution in force at the date of the original defective organization or act. (Wade on Retroactive Laws. § 26´.)

Retrospective laws may be enacted for the purpose of furnishing remedies for the enforcement of preexistant moral obligations which were not legally enforceable. (*Commissioners of Sedgwick Co., v Bunker*, 16 Kan. 498; *Weister v Hande*, 52 Pa. State 474; Wade Retroactive Laws, §§ 21, 22 and 23.)

Municipal corporations are but subdivisions of the state or territory created for the convenience and better government of its affairs by local officers. Their rights, powers and duties are the creatures of legislative enactment and they exist and act in subordination to the sovereign power that creates them.

The legislature may determine what monies they may raise and expend and what taxation may be imposed, and it may compell a municipal corporation to pay a debt which has any moral or meritorious basis to rest on. '*Mayor & C., of New York v Tenth Nat. Bank*, 111 N. Y. 446.'

In the case of *New Orleans v Clark*, 95 U. S. 644 the Court in speaking of the power of legislative control over municipal corporations says:

"The power of taxation which the legislature of a

state possesses may be exercised to any extent upon property within its jurisdiction, except as specially restrained by its own or the Federal constitution, and its power of appropriation of the moneys raised is equally unlimited. It may appropriate them for any purpose which it may regard as calculated to promote the public good.

"Of the expediency of the taxation, or the wisdom of the appropriation, it is the sole judge. The power which it may exercise over the revenues of the State, it may also exercise over the revenues of the city for any purpose connected with its present or past condition, except as such revenues may by the law creating them, be devoted to special uses, and in imposing a tax it may prescribe the municipal purpose to which the monies raised shall be applied. A city is only a political subdivision of the state, made for convenient administration of the government. It is an instrumentality with powers more or less enlarged according to the requirements of the public and which may be increased or repealed at the will of the legislature.

"In directing therefore a particular tax by such corporation and the appropriation of the proceeds to some special municipal purpose, the legislature only exercises a power through its subordinate agent which it could exercise directly; and it does this only in another way when it directs such corporation to assume and pay a particular claim not legally binding for want of some formality in its creation, but for which the corporation has received an equivalent."

The doctrine here enunciated has been approved by the courts of last resort in nearly all the States, and authorities are numerous sustaining this proposition. (See *People v Burr* 13 Cal. 342; *Guilford v Supervisors & C.*, 13 N. Y. 143;)

Judge Dillon, in his work on Municipal Corporations, § 75, thus states his conclusions:

"The cases on this subject when carefully examined, seem to the author to go no further, probably, than to assert the doctrine that it is competent for the legisla-ture to compel municipal corporations to recognize and

pay debts of claims not binding in strict law, and which, for technical reasons, could not be enforced in equity, but which, nevertheless, are just and equitable in their character, and involve a moral obligation."

In *Guilford v Supervisor* 13 N. Y. 143, the Court states the rule thus:

"The legislature is not confined in its appropriations of public monies, or of the sums to be raised by taxation in favor of individuals to cases in which a legal demand exists against the state.

It can thus recognize claims founded in equity and justice in the largest sense of these terms, or in gratitude or charity. Independently of express constitutional restrictions it can make appropriations of money whenever the public well-being requires, or will be promoted by it, and it is the judge of what is for the public good." (See also *Thomas v Leland*, 24 Wend, 65; *Brewster v Syracuse*, 19 N. Y. 116.)

The legislature may compel a city to contribute for the erection of a bridge in another city and appoint commissioners to determine the amount to be contributed. (*Carter v Brooklyn and Cambridge*, 104 Mass. 235.)

It was held in *Brewster v the City of New York*, 19 N. Y. 116, that the legislature has power to authorize taxation for the payment of a claim not a legal obligation, and without the consent of the citizens of the municipality.

"The power of the legislature to require the payment of a claim for which an equivalent has been received, and from the payment of which the city can only escape on a technical ground, would seem clear." (*New Orleans v Clark*, 95 U. S. 644.)

While the contracts and agreements entered into by the provisional governments cannot be enforced as contracts, either against the contracting parties or their successors, it does not necessarily follow that all the debts sought to be collected under this act are without

remedy, and might not be enforced in some manner against the present city of Guthrie?

If they can, then it presents a stronger reason for legislative action.   In *Nelson v. Mayor, Aldermen and Commonalty of New York*, 63 N. Y. 544, · the court said:

"It has often been adjudged that if a city obtains money on a void bond, or for an illegal tax, or by mistake, and the money goes into the city treasury, the city can be compelled to refund.

"If it obtains property under a void contract, and actually uses the property and collects the value of it from property owners by means of assessments, the plainest principles of justice require that it should make compensation for the value of such property to the person from whom it was obtained.   The city in such case however, should be held liable only for the actual value of the property, or what it obtained therefor, and would not be concluded by the contract price."

This proposition is supported by the following cases: *Herman v. City of Crete*, 9 Neb. 356; *Maher v. City of Chicago*, 38 Ill. 266; *Louisiana v. Wood*, 102 U. S. 294; *Chapman v. County of Douglas*, 107 U. S. 48; *Clark v. Saline County*, 8 Neb. 516.

There is no provision in the Federal constitution or the organic act of this Territory that contravenes the statute authorizing the village of Guthrie to pay these debts, and aside from any question of implied liability for money had and received, or property appropriated and converted to the use of the city.   It seems clear that the legislature did not exceed its authority in enacting said law.   Courts cannot overthrow legislative acts upon the ground that they are vicious in their policy or evil in their tendencies.   Statutes must stand, unless found repugnant to some express provision of the organic law or constitution.   (*Mount v. State.* 90 Ind. 29; *County of Livingston v. Darlington*, 101 U. S. 407.)

The legislature is to be the judge of the policy or wisdom of the laws they enact, and so long as they keep within the constitutional restriction, the courts cannot interfere, however unjust they may seem in their operations. Counsel for the present city of Guthrie cites us the case of *State ex rel. McCurdy v. Tappan*, 29 Wis. 644, and insist that in that case the court lays down a rule contrary to the doctrine enunciated in the cases we have herein cited. A careful examination of that case fails to reveal any serious conflict. The decision is based upon local constitutional restrictions, and the general conclusion of the court is in harmony with the adjudicated cases.

In summing up his conclusion the learned judge states this proposition:

"The legislature may authorize a town to levy taxes therein for public purposes not strictly of a municipal character, but from which the public have received, or will receive, some direct advantage, or where the tax is to be expended in defraying the expenses of the government, or in promoting the peace, good order and welfare of society, or where it is to be expended to pay claims founded in natural justice and equity, or in gratitude, for public services or expenditures, or to discharge the obligations of charity and humanity from which no person or corporation is exempt."

Under this rule the legislature might reasonably say to the village of Guthrie: "You have received some advantage from the work performed, and improvements made by these provisional governments, and these claims are founded in natural justice, and we will authorize you to tax your property to pay them."

The legislature has seen fit to provide for the payment of these claims. It had the power to enact such a law. We find the statute in conflict with no superior rule or limitation which affects its validity.

It is contended that the law is special legislation, and hence in conflict with Chap. 818, p. 170, 24 St. at Large,

which prohibits the legislatures of territories from pass-
ing any local or special laws incorporating or amending
the charter of any city, town or village, or granting to any
city or town any special or exclusive privilege, immun-
ity or franchise.    This act does not change or amend
the charter, nor does it grant any special privilege or
immunity to the village of Guthrie.    It simply recog-
nizes a moral obligation on her part to pay certain
debts created by her predecessors, from which she
received some advantage or benefit, and for which she
was not legally liable, and provided a speedy and inex-
pensive method of determing the amounts and author-
ized the levy of taxes for raising the revenues to meet
and pay the same·

In construing a provision of the constitution prohib-
iting special laws, the supreme court of Indiana in
*Mount v. State*, 90 Ind. 29, says:

"The granting of relief to individual claimants is not
within the provision of the constitution which prohibits
the enactment of special laws,    Each claim stands on
its own merits.    A general law could not be made ap-
plicable, and when general laws are not applicable spec-
ial ones may be enacted.    It is only when general laws
are applicable that special laws are forbidden."

There is nothing in the act in question that conflicts
with the provisions of the Act of Congress referred to.
Nor does the legislature attempt to confer judicial
authority upon the commissioners.    They can render
no judgment.    But they make a finding, which is re-
ported to the district court and this finding and report
is subject to revision by the court; and is subject to the
ordinary rules of practice in reference to reports of
referees.    The district court renders the judgment and
makes the order which binds the city authorities.

Chapter 848, § 4, p. 171, 24 Stat. at Large, provides
that no municipal corporation shall become indebted in
any manner exceeding four per centum on the value of

the taxable property within such corporation, as shown by the last assessment for territorial and county purposes.

The tenth paragraph of appellant's answer to the alternative writ attempts to bring the present city within this inhibition by alleging that the claims allowed against some of the original subdivisions are in excess of the four per cent. limit.

The answer discloses the fact that the assesed value of taxable property in the provisional governments prior to the organization of the city was, at least $592,467.00 and the total claims allowed amount to $17,779.14, which is less than four per cent. of the assessed valuation.

And even if it should appear that the claims were in excess of the limit, it would not invalidate the statute. This congressional provision is a limit on the municipal authorities but does not limit the power of the legislature to levy assessments on the property within the corporation by proper legislation.

The debts and the tax authorized to be levied to pay them owe their authority to this Act, Art. 1, Chap. 14, laws of Oklahoma. And the date of taking effect of this act must be taken as the time when the debt was incurred. There was no liability on the village of Guthrie until the legislature created the liability, and the debts were incurred as of that date. There is no showing that the assessed valuation of the property liable for such taxes was of less value at that date than when the provisional governments were in control, or that any assessment had ever been made for territorial and county purposes.

There was no error in sustaining the demurrer to this paragraph of answer. Having reached the conclusion that the village of Guthrie was legally liable, by legislative enactment, for the proper provisional debts, is

the city of Guthrie also liable—and can the defendant in the case at bar be required to pay the relator for his services?

This question has been passed upon by several courts of the highest resort, and the same conclusion is reached in all.    The city of Guthrie succeeded to all the rights, franchises and property of the village of Guthrie, and is bound by all her contracts and obligations.    The legislature made the village of Guthrie liable for these debts and claims—it constituted a part of her legal liabilities at the time the change was made from the village to the city organization.    The new was bound to carry out and recognize all the legal contracts and liabilities of the old.    A municipal corporation cannot escape the payment of just liabilities by a change of name, a change of organization, or a change of boundaries.    The remedy may be for a time suspended or defeated, but the obligation rests the same, and the legal successor which takes the people, the territory, the property and corporate benefits, will be bound to meet the liabilities.    (*Broughton v. Pensocola*, 93 U. S. 266; *Mobile v. Wattson*, 116 U. S. 289;   *Girard v. Philadelphia*, 7 Wall. 1;   *O'Connor v. Memphis*, 6 Lea. 730; *Mount Pleasant v. Beckwith*, 100 U. S. 514 )

It is contended that mandamus is not the proper remedy of the relator in this case, and that he has a remedy at law.    It is sufficient to say that in view of our conclusion that the legislature had the power to require these debts to be paid, it also had the power to determine the manner of their payment, and who should audit and determine the amounts.    The legislature also provided who should determine the compensation of the referees and how the same should be paid. If the city of Guthrie desired to question the amount of compensation, they should have appeared before the district judge at the proper time, and made their ob-

jections then and had their day in court. The law says the judge shall fix the compensation, and order the warrant drawn. This has been done. The city has made no objections before the proper tribunal at the right time, and she cannot now be heard to question the correctness of the amount, or the value of the services rendered. All the officers of the city of Guthrie get their powers and authority from the legislature, and they are bound by the legislative acts, and at all times subject to legislative control. If the legislature has seen fit to take this question out of their hands and entrust it to some other person designated by them, the courts have no right to set aside their actions or question the motive so long as the organic law is not violated.

There is no discretion in the city officers in reference to compensation of Losey. The only act they can perform is to draw the warrant. It is as much the proper charge against the city revenue as the salary of any other officer. It is their duty to draw the warrant as directed by the district judge, and mandamus is a proper proceeding to compel them, if they refuse. We find no error in the record,

The judgment of the district court of Logan county is affirmed at the cost of the appellants.

All the Justices concurring.