RAY v. SCHOOL DIST. No. 9, CADDO COUNTY.

No. 2010, Okla. T. Opinion Filed May 13, 1908.

(95 Pac. 480.)

**MUNICIPAL CORPORATIONS—Warrants—Validity—Limit of 4 Per Cent.** Indebtedness contracted or incurred for necessary and lawful purposes by any municipal or political corporation, or any subdivision of the territory of Oklahoma, created and existing under and by virtue of the organic act (Act May 2, 1890, c. 182, 26 Stat. 81) and the laws of the territory of Oklahoma prior to the taking of the first assessment for the purpose of territorial and county taxation, is valid if issued within the limit of 4 per centum of the value of the taxable property as ascertained by said assessment, but warrants prior to such first assessment issued for such purposes in excess of said 4 per centum limit are void.

(Syllabus by the Court.)

*Error from Probate Court, Caddo County.*

Action by Frank H. Ray against School District No. 9 of Caddo County. Judgment for defendant, and plaintiff brings error. Affirmed.

On the 20th day of October, 1905, plaintiff in error, as plaintiff, instituted this action against defendant in error, as defendant, in the *nisi prius* court, alleging in his petition that at all times thereinafter mentioned and set out defendant was a duly and regularly organized school district in Caddo county, territory of Oklahoma, No. 9, and exercising the rights and powers of such under the laws of said territory, and subject to such duties and liabilities; that on the 3d day of February, 1902, the regularly qualified and acting board of said district caused to be issued to L. A. Peil, manager of the Thomas Kane & Co. Works, a corporation, warrant No. 6 for the sum of $203.15, and caused the same to be signed by the director and clerk of said district, and attested by the seal thereof, whereby the treasurer of said district was directed to pay to the order of said Peil, as such manager, the sum of $203.15; that said warrant was issued for certain school furniture sold by the said L. A. Peil, as manager, to the said defendant, at its special instance and request; that said warrant was duly presented to the treasurer of the said district on June 21, 1902, and indorsed "not paid for want of funds," and given registry No. 6; that thereafter, for a good and valuable consideration, the said L. A. Peil, manager, did sell, assign, transfer, and indorse said warrant unto Frank H. Ray, the plaintiff, who thereby became, and ever since said time and is now, the owner and holder thereof; that a true and complete copy of said warrant, with all the certificates and indorsements, is attached to said petition, marked "Exhibit A," and made a part thereof; that said warrant has been duly presented to said defendant and its treasurer for payment, and payment demanded thereon, which has been refused; that by reason of the premises there is now due and owing to plaintiff on account of said warrant the sum of $203.15, with interest at 6 per cent. since the 21st day of June, 1902. The plaintiff further alleged that on the 3d day of February, 1902, the defendant issued, through its board, to said L. A. Peil, as such manager, its certain warrant No. 7 for the sum of $29.05, and caused the same to be signed by the director and clerk and at-

90            SUPREME COURT OF OKLAHOMA.

Ray v. School Dist. No. 9, Caddo County.

tested by the seal thereof, whereby the treasurer of said district was directed to pay to the order of the said L. A. Peil, manager, the sum of $29.05; that said warrant was issued in payment of freight on certain school furniture sold by the said L. A. Peil, manager, to said defendant at its special instance and request; that said warrant was duly presented to the treasurer of said district on June 21, 1902, and indorsed "not paid for want of funds," and given registry No. 7; that afterwards, for a good and valuable consideration, the said L. A. Peil, as manager, did sell, assign, transfer, and indorse said warrant unto the plaintiff, and the plaintiff is now the owner of said warrant; that a copy of said warrant is attached to said petition, with all indorsements thereon. Plaintiff further alleges that there is now due on said warrant the sum of $29.05, with interest at 6 per cent. since the 21st day of June, 1902. Plaintiff further declares that on the 20th day of February, 1902, said defendant caused to be issued to the said L. A. Peil, as manager, warrant No. 8 for the sum of $166.10, and caused the same to be signed by the director and clerk and attested by the seal thereof, whereby the treasurer of said district was directed to pay to the order of said L. A. Peil, manager, the sum of $166.10; that said warrant was issued in payment of certain school supplies sold by said L. A. Peil to said defendant at its special instance and request; that said warrant was duly presented to the treasurer of said district on June 21, 1902, and indorsed "not paid for want of funds," and given registry No. 8; that thereafter, for a good and valuable consideration, said Peil, as manager, did sell, assign, transfer, and indorse said warrant unto the plaintiff, who thereby became, and ever since has been and is now, the holder thereof; that a copy of said warrant, with all the certificates and indorsements thereon, is attached to said petition, marked "Exhibit C," and made a part thereof; that by reason of the premises defendant is due to the plaintiff said sum of $166.10, with interest at 6 per cent. from the 21st day of June, 1902. Plaintiff further alleges that on February 20, 1902, defendant caused to be issued to said Peil, as manager, its warrant No.

9 for the sum of $9.63, and caused the same to be duly signed, attested and sealed, and delivered to said Peil, manager, whereby the treasurer of said district was directed to pay to his order the sum of $9.63; that said warrant was issued in payment of freight charges on certain school supplies sold by Peil, as manager, to defendant, at its special instance and request; that said warrant was duly presented to the treasurer of said district on June 21, 1902, and indorsed "not paid for want of funds," and given registry No. 9; that thereafter, for a good and valuable consideration, said Peil, manager, did sell, assign, and transfer said warrant unto plaintiff, who thereby became, and has been ever since, the owner thereof; that a true and complete copy of said warrant, with all the certificates and indorsements, is attached to said petition, marked "Exhibit D," and made a part thereof; that said warrant was duly presented to defendant and its treasurer, and payment demanded thereon, which has been refused; that by reason of the premises there is due plaintiff said sum of $9.63, with interest from the 21st day of June, 1902, at 6 per cent. per annum.

On the 15th day of November, 1905, defendant filed its answer herein, admitting that it was a municipal corporation duly organized under and by virtue of the laws of the territory of Oklahoma, and was so organized at the times and dates stated and named in the petition; and further alleged that at no time prior to the issuing of the said warrants numbered 6, 7, 8, and 9, as alleged in the petition of plaintiff, was there any written claim verified or otherwise presented to the school board by L. A. Peil, or any person for him, or the said Thomas Kane & Co. Works, for the amounts set out in the respective warrants, or for any amounts whatever, and that there was no minute or entry upon the records of the said district of the presentation or allowance of any claim to the said L. A. Peil, manager. Defendant further pleads that the said county of Caddo was organized on or between the 6th day of August, 1901, and January 1, 1902; that the first assessment ever made in said Caddo county for school district and territorial purposes was in March, 1902, and by the

said assessment, which was the first assessment ever made within said school district, or territory, county, or school district, the total assessed valuation of all the property within the said school district for the said year, 1902, as made, returned, and finally equalized by the territorial board of equalization, was the sum of $10,620; that 4 per cent. of the said amount would amount to $424.80; that the said school district, prior to the issuing of the warrant sued upon by plaintiff, had issued and delivered its warrants Nos. 1, 2, 3, 4, and 5, and that said warrants in the aggregate amounted to over the sum of $1,000; that the said school district, prior to incurring the alleged indebtedness sued upon herein, had already incurred an indebtedness of about $1,000, and far in excess of the 4 per cent. of the first assessed valuation of said district; that the alleged issuing of the four warrants sued on herein, and the incurring of the alleged indebtedness sued on is null and void as being in violation of the act of Congress of the United States approved July 30, 1886.

On the 29th day of November, 1905, plaintiff filed its reply to the answer of defendant, denying each and every allegation therein contained inconsistent with the allegations of plaintiff's complaint. On the 19th day of November, 1906, the plaintiff and defendant filed in said cause a stipulation and agreed statement of facts, the body of which is in words and figures as follows:

"That Caddo county, Oklahoma, was organized on the 6th day of August, 1901. That school district No. 9 of said county was organized on the 11th day of November, 1901; that on or prior to the 1st day of January, 1902, the following board of officers were duly appointed and qualified as such officers of said district: G. L. Weaver, director; Chas. H. Neal, clerk; J. W. Turner, treasurer. That on February 3, and February 20, respectively, 1902, said officers were acting as the duly qualified board of said school district. That after said date and prior to June 31, 1902, W. H. Fullerton became the duly qualified and acting treasurer of said district in place of the said J. W. Turner. That the warrants sued upon in this action were issued to L. A. Peil,

manager Thos. Kane & Co. Works, as alleged in said petition. That said warrants were sold and delivered to Frank H. Ray, plaintiff herein, and the said plaintiff is now the legal owner and holder of said warrants. That said warrants were presented to W. H. Fullerton, treasurer of said defendant district, on the 21st day of June, 1902, and payment thereon was refused, and they were registered on said date; the registry numbers being 6, 7, 8, and 9, respectively. That the said warrants were indorsed by the said W. H. Fullerton as follows: 'Presented on June 21, 1902, and not paid for want of funds.' That said warrants were issued to L. A. Peil, manager of the said Thos. Kane & Co. Works by the said defendant acting through its proper officers, for certain goods, wares, and merchandise consisting of school seats, desks, and apparatus, etc., also for freight on said goods, which were sold and delivered to the defendant district on or before February 20, 1902. That the said warrants to which reference is heretofore made being numbered 6, dated February 3, 1902, for $203.15.; No. 7, dated February 3, 1902, for $29.05; No. 8, dated February 20, 1902, for $166.10; and No. 9, dated February 20, 1902, for $9.63—are herto attached, marked 'Exhibits A, B, C, and D, respectively,' and made a part of this stipulation. That the first assessment made in the said school district No. 9, for territorial, county, and school purposes was made by the local assessor in March, 1902, and was certified by the territorial board of equalization to the county clerk of Caddo county, on the 14th day of July, 1902, and filed in the office of the said clerk on the 15th day of July, 1902. That the assessed valuation of said district, as shown by the said report filed with the county clerk, amounted to $10,520. That the amount of outstanding indebtedness of said school district prior to the issuance of said warrants hereinbefore set out, and upon which this action is based, was $1,022.37. That the records of said school district do not show that prior to or after the execution, issuance, and delivery of the above said warrants a written claim, verified or otherwise, was filed with the officers of said district by said L. A. Piel, manager of the Thos. Kane & Co. Works, or any person acting for him, other than the record of the above said warrants. That on and prior to the dates of the issuance of the said warrants there was no cash in the hands of the treasurer of said district, no taxes levied, due or payable, nor any other funds of any kind or char-

acter out of which said obligations or any prior obligations could be paid."

*Shartel, Keaton & Wells* and *Dyke Ballinger,* for plaintiff in error.

*W. W. Vaughan* and *Theodore Pruitt,* for defendant in error.

WILLIAMS, C. J. (after stating the facts as above). It is contended by the plaintiff in error that section 4 of an act of Congress approved July 30, 1886 (24 Stat. 171, c. 818), which is in words and figures as follows: "That no political or municipal corporation, county, or other subdivision, in any of the territories of the United States shall ever become indebted in any manner or for any purpose to any amount in the aggregate, including existing indebtedness, exceeding four per centum of the value of the taxable property within such corporation, county, or subdivision, to be ascertained by the last assessment of the territorial and county taxes previous to the incurring of such indebtedness, and all bonds or obligations in excess of such amount given by such corporation shall be void   *   *   *  "—does not become operative and effective until the value of the property in such municipality or tax district is ascertained by an assessment. It is admitted that the warrants sued on in this action exceed in the aggregate 4 per centum of the value of the taxable property within the school district of Caddo county, as subsequently ascertained by the assessment for territorial and county purposes for the 1902, but plaintiff contends that said section 4, *supra,* being inoperative until after the first assessment, and that municipalities have implied power to create indebtedness when necessary, for lawful purpose, unless prohibited by statute, that the defendant in error had the right to create the indebtedness herein involved, and that plaintiff should have had judgment in the court below.

There has not been a uniformity in the decisions of the Supreme Court of the territory of Oklahoma on this question. The first case that came before said court involving this matter is that

of *City of Guthrie v. Territory ex rel. Losey,* 1 Okla. 201, 31 Pac. 190, 21 L. R. A. 841, wherein the court says:

"This congressional provision is a limitation upon the municipal authorities, but does not limit the power of the Legislature to levy assessments on the property within the corporation by proper legislation."

The next case before said court was that of *City of Guthrie v. New Vienna Bank,* 4 Okla. 194, 38 Pac. 4. The court said:

"These municipalities get their life, existence, and power from the Congress of the United States, and it was the duty and province of that body to exercise a proper control over them. This was clearly intended as a limitation on the power of the corporate powers to become indebted. They get whatever power they have from the laws enacted or permitted by the United States Congress, and, in fixing a basis upon which to rest this power of creating indebtedness, Congress prescribed that it should be an assessment of taxable property for territorial and county purposes made previous to the incurring of such indebtedness. Language cannot be plainer and the intent and purpose more certain. A provision was placed in said act for the payment of existing indebtedness at the date of its adoption, but all future obligations, debts, or liabilities were to be controlled by the limitations and inhibitions contained in the statute. All debts contracted, incurred, or imposed after July 30, 1886, the date of the approval of the statute, must owe their validity and legality to two factors, which were matters of record, and of which all persons must take notice. There must have been an assessment of taxable property within the county embracing the corporation, and the debt, when added to existing obligations, must not exceed 4 per cent. of such assessment. This is a wise and liberal limitation, and, if conditions existed which made it impracticable to operate municipal governments without creating debts, it is a condition which the courts cannot remedy; if any is required, it lies with Congress, and not with the courts or territorial Legislature."

In effect, in this case, the court expressly overrules the case of *City of Guthrie v. Territory ex rel. Losey, supra,* so far as it holds that the limitation found in the act of July 30, 1886, is not a limitation on the Legislature as well as on the municipality. In the case of *City of Guthrie v. New Vienna Bank, supra,* the court

in effect holds: That under the act of July 30, 1886, the power to incur debts by a municipality by the Legislature imposing same upon it was limited by the assessed valuation of the property of such municipality as shown by an assessment previously ascertained; that without such assessment there was no power to create liabilities so as to fasten a future charge; that there was no basis for debts of any character upon which to fix a maximum of 4 per cent.; that consequently all debts of any character or for any purpose imposed on the municipality by the Legislature was invalid; and that it was a condition precedent that such assessment should be first made, otherwise there could be no limit fixed. The entire court, comprising Chief Justice Dale, Justices Scott, and McAtee concurred in this decision; Justice Bierer being the trial judge in the *nisi prius* court. Said decision was handed down September 7, 1894. A petition for rehearing was filed and denied February 3, 1896. In the meantime, at the June term, 1895, of said court, the case of *Hoffman v. County Commissioners of Pawnee County,* 3 Okla. 325, 41 Pac. 566, was decided. In that case the court says:

"This cause involves the same question presented to the court in the case of *Nicholas and William Sauer v. J. W. McMurtry* as a taxpayer and county attorney of Roger Mills county, and was consolidated with this one for the purpose of argument before this court. The question in the Pawnee county case comes to this court by the petition in error of holders of warrants issued subsequent to the first assessment, who claim to be prejudiced by the action of the district court of Pawnee county, excluding warrants issued since the assessment in excess of the 4 per cent. limit from the bonding process and including warrants issued prior to that time therein. The presiding judge below, Justice Bierer, held to the view that said county could create a debt within the law prior to an assessment, not in excess of 4 per centum of the value of the taxable property in said county to be ascertained by the first assessment. Chief Justice Dale concurs in this view. Justice Burford entirely dissents, and still adheres to the view expressed in the *New Vienna Bank Case,* as applicable to this case as well as to that one. Justice McAtee concurs fully with the

reasoning in this opinion, notwithstanding his decision in the Roger Mills county case, and all the justices concur in the conclusions reached herein, excepting Justice Burford, in affirming the judgment of the court below."

The court further says:

"Pawnee county is a municipal corporation. It is located in a territory of the United States. The taxable property has been assessed therein as provided by law. The laws of the United States and the territory have application thereto as any other municipality whose legal status is the same, rendered so by the same power and authority. The only difference, if that amounts to a legal difference, is that a debt has been contracted previous to the assessment. It is also true that debts were contracted and in existence in the territories of the United States in 1886, when the act was passed. This is evident from the use of the words 'including existing indebtedness.' When this statute became applicable to Pawnee county, said Pawnee county having an existing indebtedness, having had an assessment, and being a municipal corporation and situated in a territory of the United States, who will undertake to define the distinction between Pawnee county in this condition and a county in the territory of New Mexico in 1886, at the time of the passage of said act, said county in New Mexico being a municipal corporation, having had an assessment, having an existing indebtedness and being situated in a territory of the United States? Certainly no one would attempt such a distinction. So we can see no escape from the conclusion that the valid indebtedness incurred in Pawnee county prior to an assessment, must be regarded as comparable to the indebtedness existing in similar municipalities in other territories of the United States in 1886, when this act was passed. We presume that Congress intended that, if existing indebtedness reached or exceeded 4 per cent. of the assessed valuation, no greater debt could be incurred, but that such an impoverished condition of affairs would appeal to the wisdom of the proper legislative authority. There are many ways to relieve such a condition, but a discussion of the matter need not take place here. We have not to deal with that phase of the question. Neither have we to deal with the suggestion of the counsel for plaintiff in error, which is wholly outside of the record that corrupt officers, unless restrained by the limitation referred to, will hopelessly burden a

municipality with debt. We can only say that, if debts incurred are fraudulent, there is ample relief, but, the court, so far as this record is concerned, is bound to presume that the indebtedness was necessarily created and valid so far as it was incurred within existing provisions of law. From this reasoning it follows that section 4 of the act of July 30, 1886, did not become applicable to Pawnee county until after an assessment was had for territorial and county taxes, or that its provisions were repealed, as to their effect therein, by section 28 of the Organic Act (Act May 2, 1890, c. 182, 26 Stat. 93), and that all indebtedness created within existing provisions of law, in said county, are valid and binding obligations on the county. Further, that if, at the time of the first assessment, the existing indebtedness reaches, or is in excess of, 4 per cent. of the taxable property of said county, no more indebtedness can be created until such time as the taxable property shall have been increased, or the existing indebtedness shall have been liquidated to such an extent that the amount of debt to be created shall not exceed 4 per cent. of the value of the taxable property, to be ascertained by the last assessment for territorial and county taxes."

Justice McAtee concurred, Justice Burford dissented, and Chief Justice Dale concurred in the conclusion affirming the judgment, but did not agree that a debt exceeding 4 per centum may be contracted prior to the first assessment, or at any other time, as long as section 4 of the act of 1886 is in force.

In the case of *Sauer et al. v. McMurtry ex rel.*, 4 Okla. 447, 46 Pac. 576, Justice Scott, speaking for the court, said:

"The court, in passing upon that case (referring to the *Hoffman Case*), held that all counties, municipal corporations, and other subdivisions in the territory of Oklahoma, created and existing under and by virtue of the organic act and the territorial statutes, have the power, prior to the taking of the first assessment of the taxable property for territorial and county taxation, to contract indebtedness, for all legitimate purposes, to an amount equal to 4 per centum of the value of the taxable property within said corporation, county, or subdivision, to be determined by the last assessment taken for the purpose of territorial and county taxation, and to issue warrants in evidence thereof."

The indebtedness created in Roger Mills county by virtue of

the warrants in question did not exceed in the aggregate 4 per centum of the taxable value of said county, as subsequently determined. The court held said warrants valid.

In the case of *Hall Lithographing Co. v. Board of County Commissioners*, 8 Okla. 391, 58 Pac. 624, Justice Hainer, speaking for the court, refused to follow the *New Vienna Bank Case*, and said:

"Applying these principles to the case at bar, we are clearly of the opinion that section 4 of said act does not become operative until the value of the taxable property within the county or municipality has been ascertained by an assessment for territorial and county taxes, for the reason that, until such assessment has been made, there is no means of determining the value of the taxable property within the county or municipality, and hence there is no standard for ascertaining the limit of indebtedness that may be created within the purview of said act; that said act of Congress presupposes an assessment, and, until the value of the property within the corporation is ascertained, the law cannot become effective. We therefore hold that the plaintiff in error, the board of county commissioners of Roger Mills county, had the power to incur a valid indebtedness and issue warrants as an evidence thereof, prior to the making of an assessment of the taxable property within said county for the purposes of territorial and county taxation, to meet the ordinary and necessary expenses of carrying on and conducting the functions of county government; and the incurring of such an indebtedness is not in violation of section 4 of the act of Congress of July 30, 1886, which prescribes, among other things, that no county shall ever become indebted in excess of 4 per centum of the value of the taxable property therein, to be ascertained by the last assessment for territorial and county taxes previous to the incurring of such indebtedness." (Justices McAtee and Irwin concur. Chief Justice Burford dissenting. Justice Burwell being the trial judge.)

In the case of *Roger Mills County v. Rowden*, 8 Okla. 406, 58 Pac. 624, Justice Hainer, speaking for the court, said:

"We therefore hold that a newly organized county in this territory has the power to create a valid indebtedness, and issue warrants as an evidence thereof, prior to the making and completion of an assessment for the purpose of territorial and county

taxation, to meet the ordinary expenses which are necessary to carry on and conduct the necessary functions of county government; and the incurring of such indebtedness is not in contravention of section 4 of the act of Congress approved July 30, 1886, which prescribes, among other things, that no county shall ever become indebted in excess of 4 per centum of the value of the taxable property therein, to be ascertained by the last assessment for territorial and county taxes previous to the incurring of such indebtedness." (Justices McAtee and Irwin concurring, Chief Justice Burford dissenting, and Justice Burwell being the trial judge.)

In the case of the *Board of County Commissioners of Roger Mills County v. Sauer et al.,* 8 Okla. 411, 58 Pac. 626, Justice Hainer, speaking for the court, said:

"We think the demurrer was properly sustained. The only defense to the action was that the county had no power to incur any indebtedness, for the reason that no assessment had been made prior to the incurring of such indebtedness. This is untenable. The case comes clearly within the rule laid down in the case of *Board v. Rowden,* 8 Okla. 406, 58 Pac. 624, where this court held that a newly organized county in this territory has the power to create a valid indebtedness, and issue warrants as an evidence thereof, prior to the making and completion of an assessment for the purposes of territorial and county taxation, to meet the ordinary expenses which are necessary to carry on and conduct the functions of county government; and the incurring of such an indebtedness is not in contravention of section 4 of the act of Congress approved July 30, 1886, which prescribes, among other things, that no county shall ever become indebted in excess of 4 per centum of the value of the taxable property therein, to be ascertained by the last assessment for territorial and county taxes previous to the incurring of such indebtedness."

By reference to the case of *McMurtry v. County Commissioners of Roger Mills County,* 6 Okla. 60, 55 Pac. 1069, an examination will show that the indebtedness was less than 4 per cent. of the first tax assessment when same was made, and the syllabus in the former case plainly says that the indebtedness is legal if not in excess of 4 per cent. of the first assessment.

In the case of *Hall Lithographing Co. v. Board of County Commissioners, supra,* the plaintiff sought to recover the sum of $1,516.84 upon four certain warrants issued by said county before an assessment had ever been made. The first assessment in said county showed $186,368.84 of taxable property. This claim was far below the maximum limit of 4 per centum of the taxable valuation. On page 385 of 8 Okla., page 622 of 58 Pac., the court says: "It further appears from the agreed statement of facts that the total amount of outstanding indebtedness of said county, including the warrants in question, was only $3,564.83." The only question before the court in that case was the question of the illegality of the warrants sued on, and not a question of any excess above the 4 per centum limit.

In the case of *Commissioners of Roger Mills County v. Rowden, supra,* the agreed statement of facts, found on page 407, 8 Okla. (58 Pac. 624), shows that the warrants sued on amount to only $229.61, and shows also that said county was within the 4 per cent. limit as represented by the first assessment for territorial and county purposes. In the case of *Roger Mills County v. Sauer, supra,* action was brought on warrants amounting to $331.50, and defense was made to same on the grounds that the warrants were issued before the assessment was made; there being no contention that the warrants were in excess of 4 per centum of the tax valuation according to the first assessment. It does not appear that the Supreme Court of the territory of Oklahoma has ever in any case passed upon the question where the indebtedness created prior to the first assessment was in excess of 4 per centum of the tax valuation for territorial and county purposes when said first assessment had been made. The question involved in this case has never been determined by said court, except in the *New Vienna Bank Case.* Then it was held that an indebtedness created before any assessment had ever been made was absolutely null and void. Since then the doctrine announced by Chief Justice Burford in that case has been modified in the *Hoffman, McMurtry, Hall Lithographing Co.,* and *Rowden Cases,* to the extent

that indebtedness created prior to the first assessment not in excess of 4 per centum of the value of the taxable property, to be ascertained by the first assessment for necessary expenses, was not invalid. The question is now before us as to whether or not we will absolutely overrule the *New Vienna Bank Case,* and go to the extent of holding that section 4 of the act of July 30, 1886, has no application whatever until after the first assessment has been made, and consequently no limitation whatever on municipalities prior to the first assessment. Howsoever much we might feel inclined to follow and recognize to the greatest degree the reasoning and conclusions as announced in the *New Vienna Bank Case,* yet, the modifications announced in the *Hoffman, McMurtry, Hall Lithographing Company,* and *Rowden Cases,* have been so generally acquiesced in, and acted upon in the territory of Oklahoma that the doctrine of *stare decisis* applies, for the same has become, you might say, a rule of property, and for that reason we do not feel that we would be justifiable in disturbing that rule at the present time. But why should we extend the same? The intention of Congress in passing the act of July 30, 1886, is obvious. Clearly its intention was to prevent the recurrence of evils which prior to that time had prevailed in the territories and their municipal governments, and to guard against abuses which were liable in the future, as in the past, to creep into the administration of such public affairs, and safeguard against peculations, grafts, extravagance, defalcations, and burdens in the way of taxation theretofore incumbering the administration of such municipal governments.

It was unquestionably with this view that Congress enacted the statute limiting counties, cities, towns, and districts in the territories from becoming indebted in any manner or for any purpose in excess of the 4 per cent. of their taxable value. The Supreme Court of the territory of Oklahoma, in the decisions heretofore cited, has repeatedly held that such municipalities, prior to the first assessment, might incur such indebtedness, not to exceed 4 per centum of the taxable value as ascertained by law, to-wit, the first assessment. We feel constrained to adhere to this limitation.

It ·is a salutary limitation upon the debt-contracting power and the right to impose taxing burdens upon the people. There is greater reason for applying this safeguard upon new municipalities than at any other time. The young man embarking in life's battles has a limitation in capacity—yea a credit limitation—because he is untried. Naturally the same limitation should be placed upon the new municipality. But to hold that it was the intention of the greatest lawmaking body in this republic that the bridle should be taken off in the first life of a municipality in the contracting of debts up to the time of the first assessment, and thereafter it should be put on, would be to encourage beginners in municipalities to contract debts unrestrained, and consequently to shackle the successors to such an extent that they must bear the burdens of the expenditures of the beginners, though they have to forego wise improvements during the life of their administrations in municipal government. Reason, judgment, and good conscience supports this conclusion.

It may be urged that by no fixed rule can any one determine the exact amount of indebtedness that may lawfully be incurred under the 4 per centum limitation prior to the first assessment. The banker, bond buyer, or credit man, contracting with the young man that is first embarking in business necessarily to a degree experiments in extending credit until he has been tried, as does the warrant buyer and the script holder prior to the first tax assessment. He buys with full knowledge, in purchasing a warrant, that afterwards, if it is. ascertained to be in excess of the 4 per centum limitation after the first assessment has been made, it is void, and he acts at his peril. But if the basis of his debt rests upon good conscience and sound morals, he can take his case to the legislative power of the sovereignty for remedy. It is better that those who are in their municipal swaddling clothes should be protected by the limitations that have been imposed by wise legislation, than that these barriers should be cut down by technicalities, and, without any restraint, the strong power of greed and avarice

and over-reaching machinations should be turned loose against such municipalities.

The judgment of the lower court should be affirmed, and it is so ordered.

All the Justices concur.