## EDWARDS v. SCHOOL DISTRICT NO. 222, COTTON COUNTY.

No. 15167—Opinion Filed March 3, 1925.

Opinion on Rehearing April 27, 1926.

**1. Schools and School Districts—Contract for Building—Statutes.**

Under section 6184, Revised Statutes of Oklahoma, 1903, in order to authorize a contract for building a schoolhouse and make legal warrants issued in payment for same, it was necessary to have a district meeting and the house to be built, agreed upon by the qualified electors at such meeting.

**2. Same—Legality of Contract.**

The legality of the contract and warrants issued, in the first instance, under the above statute and under the provisions of section 4 of Act of Congress of July 30, 1886, fixing the limit of indebtedness at 4 per centum of the taxable property, does not turn upon whether or not the taxable property of the district has been assessed prior to date of contract, but whether or not any agreement had been made by the district meeting to provide a schoolhouse, and any funds provided for paying for the same.

(Syllabus by Threadgill, C.)

**3. Same—Building Erected Prior to Statehood Under Contract in Excess of Debt Limit—Remedy of Contractor.**

Under the law prior to statehood, while the officers of the school district were without power to make a contract binding upon such district, in excess of the debt-limit, and the person who acted under such pretended contract cannot recover a judgment against the school district on same, yet where he acted in good faith, and is not paid, if the property is in existence and obtainable, he may be decreed the equitable owner of the same, and the same ordered and adjudged to be delivered to him upon demand.

(Syllabus Substituted by the Court.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Cotton County; Thomas A. Edwards, Assigned Judge.

Action by R. J. Edwards against School District No. 222 of Cotton County, Okla., on contract or for recovery of property. Judgment for defendant, and plaintiff brings error. Affirmed.

Black & Black, for plaintiff in error.

Madden & Hubbell, for defendant in error.

Opinion by THREADGILL, C. The plaintiff brought suit against the defendant in error, as defendant, to recover the sum of $1,200 for building a schoolhouse in 1907. The undisputed facts are as follows:

The school district was No. 222 of Cotton county. The school board, in 1907, consisted of W. E. Walters, J. D. Staley, and J. C. Puckett, as director, clerk, and treasurer, respectively. This board employed E. A. Lutes to build a schoolhouse for the district and agreed to pay him $1,200 for the same after the work was done; having no funds, they issued to him, on September 10, 1907, a warrant in the sum of $1,-200, and on October 29, 1907, he presented this warrant to the treasurer for payment and same was registered and refused for the lack of funds. Thereafter, E. A. Lutes, for a valuable consideration, sold and de-

livered the warrant to plaintiff. On November 11, 1907, and prior to sale and delivery of the warrant to plaintiff, the said school board entered into a written contract with the said E. A. Lutes in which they stated that said warrant was issued on September 10, 1907, and for building a schoolhouse for $1,200, and they agreed that the warrant should bear interest at six per cent. from September 10, 1907. The contract further provided as follows:

"First party hereby agrees, as soon as it may legally do so, to take all necessary steps, action and proceedings for the issuance of funding bonds or some other form of bonds, as it may be permitted to issue for the purpose of taking up and paying for the said warrant, it being understood and agreed that it will deliver to him a twenty year bond, without option, bearing 6% interest in equal exchange for a like amount of warrants and 6% interest on such warrants from date of registration. It being understood that second party will furnish blank bonds and outline of proceedings which first party agrees to follow providing the same are in accordance with law."

The plaintiff bought this contract with the warrant. At the time the warrant was issued no assessment had ever been made of the taxable property in the district and no provisions had been made for funds with which to pay for the building of the schoolhouse or for paying the warrant. The schoolhouse was needed, but there were no funds for public school purposes. The amount of the warrant and the contract price of the schoolhouse for which it was issued was in excess of four per cent. of the assessed valuation of the taxable property in the district according to the assessment thereafter made for the year 1908, which was found to be the sum of $10,525. After the schoolhouse was built the same was turned over to the district and has been used for school purposes ever since. The only disputed fact was whether or not the contract for building the schoolhouse was let with the knowledge and consent of the qualified electors of the district at a meeting held for that purpose. On this point the testimony was conflicting. E. A. Lutes testified that he made the contract with the school board to build a schoolhouse and before he made the contract there was a district meeting at which the matter of building the schoolhouse and the contract with him for building it were discussed, and it was suggested that one John Tansy would pay seventy-five cents for the school warrants and they would not make any contract that day, because the school board

were to see John Tansy and find out if he would take the warrants at seventy-five cents on the dollar and "if he would not, they were to do the best they could" and he said that the meeting instructed the board to go ahead and prepare a schoolhouse.

Burr Hooker testified that he was present at the meeting referred to by E. A. Lutes, and there were about five or six of the citizens of the district there, and that E. A. Lutes was present and wanted a contract to build a schoolhouse, and they discussed it and those present objected to any warrant being issued to pay for building the schoolhuse, and there was not a word said about John Tansy buying warrants, and those present objected to going in debt and they had no money to pay with and they fought down the proposition and there were no arrangements made whatever to build a schoolhouse.

W. E. Walters testified that he was the same person who was a member of the school board of school district No. 222; that he was present at the first meeting held after the district was created and it was the same meeting mentioned by Lutes and Hooker; that there were about ten persons present, he said Mr. Lutes was present and proposed to build the schoolhouse and take warrants in payment and the majority of those present voted to "go ahead" and issue warrants to build the schoolhouse; that he could not remember that anything was said about selling the warrants to somebody else to raise the money and there were no provisions made for funds with which to build the schoolhouse, as they had no assessment and no valuation of the property. Such was the substance of the testimony on the disputed fact as to whether or not the qualified voters of the district meeting agreed on the schoolhouse to be built to be paid for out of the funds provided for that purpose.

The case was tried to the court, without a jury, upon the facts agreed to, as above stated, and the evidence of the three witnesses above mentioned and their testimony, the substance as given, and the the court rendered judgment for defendants and plaintiff appealed by petition in error with the case-made attached asking for a reversal of the judgment.

1. He first contends that he was entitled to judgment on the warrant up to an amount equal to four per cent. of the assessed valuation of the property in the school district, citing: Ray v. School District No. 9, 21 Okla. 88, 95 Pac. 480; Mc-

Gillivray v. Joint School District No. 1, 112 Wis. 354, 58 L. R. A. 100.

The first case cited holds that in case of a new district it is not necessary that the property in it be assessed and its valuation determined before creating a legal indebtedness. This removes one of the objections relied on by the defendant as a defense. The second case holds that in Wisconsin, where the indebtedness created in excess of five per cent. limitation and bonds were issued for same, the whole indebtedness will not be declared illegal, but only the excess, and the bonds will be scaled down pro rata to bring the amount not in excess within the legal limit and judgment rendered accordingly. Many good reasons were given for the rule and plaintiff claims that there is nothing to prevent the application of the rule in this case, and the valuation of the property in the district as shown by the assessment of 1908, being $10,525, the plaintiff would be entitled to four per cent. of this valuation, being the limit under section 4 of the Act of Congress of July 30, 1886, in force prior to statehood, which would give him $421. But under the evidence in the case and the finding of the court and the statute in force in 1907, and its construction, can we say this rule is applicable?

Section 6184, Revised Statutes of Oklahoma. 1903 (Commonly called Wilson's Statutes), being section 10364, Comp. Stat. 1921, provides:

"The district board shall purchase or lease such a site for a schoolhouse as shall have been designated by the voters of a district meeting, in the corporate name thereof, and shall build, hire, or purchase such schoolhouse as the voters of the district, in a district meeting, shall have agreed upon, out of the funds provided for that purpose, and make sale of any schoolhouse site or other property of the district, and, if necessary, execute a conveyance of the same in the name of their office, when lawfully directed by the voters of such district, at any regular or special meeting and shall carry i: to effect all lawful orders of the district."

Applying the provisions of this statute to the instant case, we see that, in order to authorize the contract for building the schoolhouse and make the warrant legal for the same. it was necessary to have a district meeting and the sort of house to be built agreed on by the qualified electors at such meeting before the district board could contract for it. The evidence shows that they had the meeting and there were from six to ten electors present, but it is conflicting as to what action was taken, and the trial court evidently believed the testimony of Burr Hooker that the proposition to build a schoolhouse was rejected and voted down, or, if he believed the testimony of E. A. Lutes and W. E. Walters, he was warranted in believing that nothing definite was agreed upon except that the school board should go ahead and build a schoolhouse if funds could be provided for that purpose. There is nothing in their testimony to show a schoolhouse of any definite description for a definite price agreed upon. The court's general finding in favor of the defendant has the force and effect of a jury's verdict, and where it is based upon conflicting testimony, and there is any evidence to support it, it will not be disturbed by this court on appeal. We must, therefore, conclude that the contract to build and the warrant issued to pay for building the schoolhouse were illegal, not being based upon an agreement of the district meeting as provided for in said section.

2. The contract was illegal for another reason, one based upon an undisputed fact that there were no funds provided for such purpose. There was no levy of taxes agreed upon by the school district or county commissioners, and the legality of the contract does not turn upon whether or not the taxable property of the district has been assessed, but whether or not any agreement had been made to provide a schoolhouse and any funds had been provided for paying for the same.

The Supreme Court of Wisconsin in construing and applying a similar statute to ours, above quoted, in Nevil v. Clifford, 24 N. W. 65, uses the following language:

"This section only authorizes the board to build a schoolhouse out of funds provided by the district for that purpose. There is no power in the board to build or cause the house to be built, and then make the cost of the building a charge against the district. The power to charge the property of the taxpayers of the district with the cost of the building a schoolhouse is vested in the voters of the district at a district meeting: See subdivision 5, paragraph 430, Rev. St. 1878. This section limits the power of the district meeting as to the amount that may be raised in the district by tax for that purpose in any one year; and, so far as the limitation applies to the district in question, that amount is limited to $600, unless a greater sum is authorized by the town board of supervisors. To the limitations contained in this section chapter 118, Laws 1879, adds an additional one. This additional limitation does not, however, affect this case. There is, however, no pretense that the evidence in this case shows that the district meeting ever voted directly to raise any tax for the purposes of build-

ing the schoolhouse in question. If it be urged that the vote of the district, at the meeting on the sixteenth of September, 1879, to let a job to a builder to get the house completed on the site designated, and directed the board to contract with a responsible bidder for the erection of a schoolhouse, was equivalent to a vote to levy a tax on the property of the district for that purpose, it clearly could not, under the other limitations of the powers of the district meeting, be construed into a resolution to levy a tax exceeding $600, as that was the extent of their power, when acting directly upon the question. They could not by indirection do that which they could not do directly. Nor could they delegate power to the board to contract a debt on behalf of the district, and levy a tax to pay the same, which they had no power to do themselves."

See, also, Capitol Bank of St. Paul v. School District (N. D.) 48 N. W. 363.

In the case of Ray v. School District, supra, the court held that municipalities, under the laws in force before statehood, could incur indebtedness "not to exceed four per centum of the taxable value as ascertained by law, to wit, the first assessment," and no more, but the court did not hold that such indebtedness could be incurred without complying with the provisions of the statute.

In a recent opinion rendered by Justice Branson, Threadgill v. Peterson, 95 Okla. 187, 219 Pac. 389, the same rule is stated as follows:

"The officers who expend the money can expend only so much as is provided for the specific purpose for which the estimate is approved and the tax levy made. When that amount is expended, or contracts made which, when satisfied, will exhaust such funds, the officers of the municipality, as here, have no further power to make any contract which in any wise imposes any liability in law upon the municipality or political subdivision they represent. If such pretended contract is made, the officers are personally liable for any amount earned by him with whom the same is made."

In applying the rule thus stated Justice Branson says:

"The schoolhouse in question may have needed repairs. The legal way to bind the school district, as such, is the approval by the excise board of an item in the budget for the specific purpose, and to make a levy on the taxable property of the district to raise the revenue necessary to pay the same. Since in the judgment of the excise board in not approving the item for such intended purpose the said improvements were unnecessary, no way to bind the school district, by contract during that fiscal year, for such purpose made by the board, finds any sanc-

tion in the provisions of the law of the state."

From these authorities we conclude that the contract underlying the warrant and the claim of plaintiff is illegal and void, and fixes no liability upon the school district.

3. In the next place plaintiff contends that if he is not entitled to the relief asked for on the contract, then he is entitled to the return of the said schoolhouse. As authority for this contention we are cited to Superior Mfg. Co. v. School District No. 63, 28 Okla. 293, 114 Pac 328, and School District No. 89 v. Van Arsdale, 63 Okla. 82, 162 Pac. 741. These cases are not decisive of the question involved. The language used was obiter dicta and affords no authority for plaintiff's contention.

In the case of Fairbanks-Morse Co. v. City of Geary, 59 Okla. 22, 157 Pac. 720, the court, considering the very question presented here, laid down the following rule, in paragraph 4 of the syllabus:

"A debt which is in excess of the constitutional or statutory limit is void; and in no form can such debt be held valid upon any theory of quantum meruit, or equitable obligation. The absolute lack of power to contract such indebtedness bars every form of action and every legal device by which recovery is sought; nor will the courts aid the vendor to recover the property sold and delivered under such illegal contract."

It has been repeated many times by this court, but never to the contrary, that the officers of municipalities have their limitations fixed by law and all persons transacting business with them are charged with knowledge of such limitations, and when the officers and credit men exceed the legal limits in making contracts and debts against such municipalities such contracts and debts cannot be enforced by the courts; nor will the courts lend assistance to recover property furnished on such contracts. O'Neal Engineering Co. v. Ryan, 32 Okla. 738, 124 Pac. 19; Fairbanks-Morse Co. v. City of Geary, 59 Okla. 22, 157 Pac. 720.

We are of the opinion that the judgment of the trial court should be sustained.

### On Rehearing.

BRANSON, V. C. J. The original opinion in this action, filed March 3, 1925, is now before this court upon a second petition for rehearing. What we say herein supplements the said opinion, and modifies and changes the same, in so far as it is inconsistent with the said opinion.

The petition filed by the plaintiff in this

action prayed in the alternative. The alternative was, in event of failure to recover a money judgment on the warrant, that the building erected by the plaintiff for the benefit of the school district and used for a long number of years by said district be adjudged to be the property of the plaintiff and ordered returned to him upon his demand.

Upon reviewing the record and the opinion filed March 3, 1925, herein, we see no cause for changing the views as expressed in said opinion, to the extent plaintiff cannot recover the judgment prayed against the school district; but said opinion, in so far as it denies the alternative prayer of the petition, is erroneous. It must be noted that this transaction occurred prior to the admission of Oklahoma into the Union as a state. The provisions of section 26. art. 10, of the Constitution of the state of Oklahoma and the statutes of the state governing the fiscal system of school districts do not apply to such transactions. The inhibition existing against the contract in question was found in the Organic Act and section 4 thereof, and it fixes a limit of. indebtedness at 4 per cent. of the taxable property of the district. While this inhibition operates to nullify the pretended contract on which recovery is sought in the instant case, it is materially different from the inhibitions of the law of the state governing municipalities since statehood.

Under the law of the state. there is not only the inhibition contained in section 26. art. 10, of the Constitution, but, in addition to that, the statute by fair intendment and purpose only permits one cause of action in event a contract in excess of the estimate made and approved for a particular purpose is sought to be enforced, and that is a suit against the officials incurring the obligation. (See section 8638, C. O. S. 1921. In addition to said section giving the cause of action against the officials contracting the indebtedness, section 8639, C. O. S. 1921, makes such officers guilty of a crime. These provisions did not exist at the time the contract in the instant case was executed, and the building in question erected. We think that the rights of the parties are governed by the law as it existed in the territory and not by the law of the state, and that under the inhibition above referred to, fixing the debt limit of the school district at not exceeding 4 per cent. of the assessed valuation of the property, there was nothing in the law or the objections urged here by the district which expressly prohibited or prohibited by clear implication the courts from granting relief which would do equity between the parties. The plaintiff has a right in support of his alternative prayer to invoke the doctrine laid down by the Supreme Court of the United States in the case of Chapman v. County of Douglas, 107 U. S. 348, 27 L. Ed. 378, and the case of Lee v. Board of County Commissioners of Monroe county, 114 Fed. 744, Thompson v. Elton, 109 Wis. 589, 85 N. W. 425, Salt Creek Township v. King Iron & Bridge Mfg. Co. 51 Kan, 520, 33 Pac. 303, and other cases to the same import.

The judgment of the trial court is therefore affirmed, in so far as it holds that the plaintiff cannot maintain his action for a money judgment against the school district in question, but the judgment of the trial court is reversed as to that part denying his prayer for a return of the property.

NICHOLSON, C. J., and HARRISON, MASON, LESTER, HUNT, and RILEY, JJ., concur.

Note.—See under (1. 2) 35 Cyc. p. 941. (3) 35 Cyc. p. 974.