### EXCISE BOARD OF CARTER COUNTY v. CHICAGO, R. I. & P. RY. CO.

No. 21255. Opinion Filed Oct. 6, 1931.

John L. Hedge, Joe Brown, and S. A. George, for plaintiff in error.

W. R. Bleakmore, W. L. Farmer, John Barry, and Robert E. Lee, for defendant in error.

RILEY, J. This is an appeal from the Court of Tax Review sustaining a protest of the Chicago, Rock Island & Pacific Railway Company against certain items of the tax levy of Carter county for the fiscal year ending June 30, 1930.

The judgment appealed from sustains the protest as to a .687 of a mill made for the county sinking fund to cover interest and accruals upon two judgments against the county and in favor of one Quinn Wicker, and .5 of a mill levied for school district No. 19 (independent school district, city of Ardmore).

The sinking fund levy to the extent stated was protested upon the ground that it was to provide for interest and one-third of the principal of two judgments aggregating some $60,000, taken upon claims against the county for work, labor, and material furnished in the reconstruction and repair of certain bridges which had been damaged or destroyed by extraordinary floods and storms during the spring of 1927.

The contention is that said judgments were void as having been rendered upon claims in excess of the income and revenue provided for road and bridge purposes in said county for the fiscal year in which the work and labor was done and material furnished and without having been authorized by vote of the people at an election held for that purpose.

The petitions upon which the judgments were based are in the record, and among other things allege that in the spring of 1927, unprecedented rains and floods occurred in Carter county whereby a number of bridges theretofore built by the county were washed away; that by appropriate resolutions the board of county commissioners declared an emergency to exist and determined to proceed at once to reconstruct said bridges; that pursuant thereto plaintiff in said action and certain other persons were employed by the board to replace the bridges, which was done, and the other parties assigned their claims therefor to the plaintiff Quinn Wicker; that itemized, verified claims therefor were filed with the county clerk, and "that each and all of said claims have been presented to the board of county commissioners and by them disallowed for the reason that there is no appropriation out of which to pay same."

The answer of the county in each case was a general denial. Plaintiff in error concedes that the judgments were upon claims in excess of the appropriation for said purposes for that year and asserts that at the time the budget was made and approved for that fiscal year, the bridges and roads were intact; that no one assumed or could know the damage would occur which caused the emergency on account of which the work was done and the judgments in question were taken.

The principal contention of plaintiff in error is that the judgment roll does not show the judgments to be void, and that, therefore, they cannot be successfully attacked in a collateral proceeding before the Court of Tax Review.

If the judgments in question are fair and valid on the judgment roll, we are inclined to agree with the contention that they can-

not be successfully attacked collaterally in proceedings of this nature, but if the judgment roll shows upon the face thereof that the judgments are void, then they are subject to collateral attack before the Court of Tax Review, and the judgment therein rendered is correct.

A number of cases are cited to show of what the judgment roll consists. Generally it may be said to consist of the petition, process, return, pleadings subsequent thereto, reports, verdict, orders and judgment and all material acts and proceedings of the court. LeClare v. Calls Him, 106 Okla. 247, 233 P. 1087; Pettis Johnston, 78 Okla. 277, 190 P. 681. All the cases hold that the petition is a part of the judgment roll. Cases are also cited wherein it is held that the fact that the petition defectively states a cause of action, or fails to state one, does not make the judgment void on collateral attack. McDougal v. Rice, 79 Okla. 303, 193 P. 415; Lindberg v. Messman, 95 Okla. 64, 218 P. 844.

But a different rule seems to apply where the petition not only fails to state a cause of action, but affirmatively shows that no valid cause of action can be stated upon a particular claim against a municipality.

Section 26, art. 10, Constitution of Oklahoma, specifically provides that:

"No county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted. in any manner, or for any purpose, to an amount exceeding in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose. * * *"

It has been repeatedly held that a debt of a municipality, incurred in violation of this section of the Constitution, is void.

In Protest of Carter Oil Co., 148 Okla. 1, 296 P. 485, it is held:

"A debt which is in excess of the constitutional or statutory limit is void; and in no form can such debt be held valid upon any theory of quantum meruit, or equitable obligation. The absolute lack of power to contract such indebtedness bars every form of action and every legal device by which recovery is sought."

In that case the judgment attacked was held to be void. In the body of the opinion Mr. Justice Andrews, speaking for the court, says:

"There was no allegation in the petition that any appropriation had ever been made for the purpose of purchasing school busses," or that there was any available appropriation for that purpose.

"This court cannot give its approval and hold valid a judgment rendered on the 29th day of August, 1928, for busses purchased by a school district on the 22nd day of August, 1928, in the absence of proof that at the time of purchase there was an appropriation out of which the purchase could have been legally made or that such an appropriation had been thereafter made, when there has been no allegation made in the petition of such an appropriation."

In Re Gypsy Oil Company, 141 Okla. 291, 285 P. 67, one of several grounds for sustaining a protest against the tax levy made to cover a judgment was that the petition upon which the judgment was taken did not state a cause of action.

In the instant case the petitions upon which the judgments were taken not only failed to state that there was an appropriation, but affirmatively alleged that no appropriation was ever made, and show that the claims were disallowed for that reason.

Plaintiff in error cites section 10102, C. O. S. 1921, as authority for the creation of the indebtedness upon which the judgments were taken. Said section reads as follows:

"The board of county commissioners may pay for the reconstruction or repairing of such county bridges as have been heretofore or may be hereafter damaged or destroyed by floods, and including bridges where the same, by reason of an emergency, have been repaired or reconstructed by any person or persons, without first having contracted to repair or reconstruct the same with said county commissioners; Provided, that the authority granted by this section shall apply only to claims for repairing or reconstructing bridges previously owned by the county on the same site."

This section does authorize the board of county commissioners to pay for the reconstruction or repair of county bridges damaged or destroyed by floods, etc., but does not purport to give authority to create indebtedness in excess of the income and revenue provided for the fiscal year. If it did in express language purport to give authority for the creation of such indebtedness, it would be invalid and in violation of section 26, art. 10, of the Constitution.

Schulte v. Board of Co. Com'rs, 119 Okla. 261, 250 P. 123, is cited and relied upon by plaintiff in error. That case does in a measure tend to sustain the contention of the plaintiff in error with respect to the validity of the judgments in question. But in view of what is held in Protest of Carter Oil Co., supra, and Boardman Co. v. Board of Co. Com'rs of Ellis County, 136 Okla. 85, 276 P. 474, it can hardly be said that the

reasoning in the Schulte Case, supra, can be followed. In Boardman Co. v. Board of Com'rs, supra, it was held:

"Section 10102, C. O. S. 1921, does not and cannot authorize county commissioners to enter into contracts for the reconstruction of county bridges destroyed by flood waters, and to be paid for out of taxes to be assessed, levied, and collected for a succeeding fiscal year, without the assent of three-fifths of the voters of such county, voting at an election, held for that purpose, in the manner provided by section 26, art. 10, of the Constitution of Oklahoma."

In the body of the opinion the court says:

"We think that much of the reasoning in the Schulte Case is so unsound as to warrant us in overruling the same, but for the fact that the court appears to have been making a study of section 10102, supra, and its probable meaning in order to determine whether the intention of the contracting parties in entering into the contracts and the intention of the judge in rendering judgment thereon were fraudulent and collusive. That case seemed to turn upon the conclusion that the judgments rendered by courts of proper jurisdiction, fair upon their face, are binding upon all parties thereto upon all questions which should have been raised at the time they were rendered."

The so-called emergency created by the destruction of bridges by storms and floods should in no case be of greater importance than the preservation of the protection afforded the taxpayers of the state by the Constitution against excessive tax levies. For to hold that the Legislature has power to enact a statute under which this plain provision of the Constitution could be evaded in this particular would open the door for other similar so-called emergencies, and eventually, to no limitation on the rate of taxation.

It is argued that unless it is held that section 10102, C. O. S. 1921, gives county commissioners power to create indebtedness in excess of the income and revenue provided for bridge purposes and without appropriation being made therefor, said section is meaningless for the reason that the excise board cannot make levies for possible emergencies, and that, if they could, emergencies would arise that no one could foresee. Whether or not such holding would render said section meaningless, could not affect the question one way or the other All statutory enactments which violate the provisions of the Constitution must necessarily be held to be without meaning and ineffective.

It is also contended that the indebtedness here involved is of the same nature as that involved in the case of Smart, Sheriff, v.

Board of Co. Com'rs of Craig County, 67 Okla. 141, 169 P. 1101, and similar cases. Such is not the case. There is a vast difference between the duty of a sheriff to feed and maintain prisoners in the county jail, whom he could not release therefrom without subjecting himself to removal from office, and the duty of the county commissioners to construct or repair bridges. It is not mandatory upon the county commissioners to build any bridges at any particular place or at any particular time. These matters are entirely within their discretion limited only by the funds within their command.

We are unable to follow the reasoning in the case of Schulte v. Board of County Com'rs, supra, and in so far as said case would seem to hold that excessive indebtedness of the nature here involved is valid by reason of the provisions of section 10102, supra, said case must be, and is hereby, in that particular, overruled.

The judgment for which the levy here involved was made to cover being void upon the face of the judgment roll, the fact that the county treasurer had invested a portion of the county sinking fund therein did not and could not change the situation so as to render the judgments or the levy made to reimburse the fund valid. The judgment of the Court of Tax Review reducing the levy to the extent stated is correct and must be, and is, affirmed.

The other question involved is the levy of .50 mills made for the benefit of the independent school district of the city of Ardmore, stipulated in the record to have been made for physical education. An election in the school district was had authorizing an additional levy for school purposes of 8.50 mills, and it is conceded that the levy of 13.50 mills was legal, but in addition thereto the excise board made a levy of .50 mills for physical education, making the total levy for that year 14 mills. No election was had during that year authorizing the .50 mill levy. The last election held in the school district on that question was in 1920, and held under the authority and provisions of sections 10437-10441, inclusive.

Section 10437 authorizes school districts in cities of the first class to establish and maintain certain activities, within which physical education is included.

Section 10438 authorizes the inclusion of an item for such purposes in the annual estimate within the constitutional and statutory limits.

Section 10440 provides that if the board is unable on its regular funds to establish and

maintain such activities, it may, and upon the petition of not less than 15 per cent. of the number of voters voting at the last preceding school elections, it must, submit to the electors of the district at the next school election of any sort the question of levying a tax not to exceed one-half of one mill to be levied exclusively for such purposes, and if a majority of the votes cast upon such proposition in such election be in favor thereof, the tax shall be levied and collected as other taxes.

Section 10441, C. O. S. 1921, provides:

"After the question of the levy and collection of such special tax has been submitted and approved as provided in this act, the authority shall remain, and such tax shall be levied and collected annually until such time as the voters of the school district shall, by majority vote, order the discontinuance of the levy and collection of such tax. The question of the discontinuance of the levy and collection of such tax shall be submitted to the voters in the same manner as the proposition to authorize the levy and collection of said tax."

The validity of the latter section is in question. It is conceded that the election provided for by section 10440 was held in 1920, and that no election was ever held ordering the discontinuance of this levy. By section 9 of art. 10, of the Constitution, the total taxes on an ad valorem basis for all purposes is limited to 31½ mills divided into five classes as follows:

| | |
|---|---|
| State tax | 3½ mills |
| County | 8 mills |
| Township | 5 mills |
| City or town | 10 mills |
| School district | 5 mills |

—with a proviso that for certain purposes counties may levy up to ten mills, and a further proviso as follows:

"Provided, that the aforesaid annual rate for school purposes may be increased by any school district by an amount not to exceed ten mills on the dollar valuation, on condition that a majority of the voters thereof voting at an election, vote for said increase."

It will be observed that in the first part of the section the total taxes to be limited are described as "total taxes in any one year." The proviso authorizing the increase for school purposes refers to same as "the aforesaid annual rate," and the conditions under which the "aforesaid annual rate" may be increased is that a majority of the voters of the district voting at an election vote for said increase. The question then occurs, Does this section require an election

to be held each year on any proposed increase above five mills for school purposes, or does it authorize the continuance of such increased levy from year to year after once authorized until ordered discontinued by a majority vote at an election held for that purpose?

So far as levies for general school purposes are concerned, the Legislature seems to have understood the section to require an election each year to authorize such increase, for chapter 192, S. L. 1915, as amended by sec. 1, ch. 247, S. L. 1917 (sec. 10446, C. O. S. 1921), requires an election to be held on or before the second Tuesday in May each year. This, we think, is fairly contemplated and plainly intended by section 9, art. 10, of the Constitution.

The same rule, we think, would apply to the special levy provided by section 10440, supra. The levy, if any, for physical education must be made within the 15-mill levy fixed by the Constitution. Any increase above the five-mill levy is referred to in the Constitution as an annual levy. Clearly the Constitution requires the approval of any levy above five mills in any year to be approved by a majority vote of the voters in the district voting at an election for that purpose. It means such additional levy for any one year must be authorized at an election held for that particular year.

There is no reason why the requirements, if any, for physical education should not be placed in the general budget required to be prepared annually by section 10447, C. O. S. 1921, and the levy therefor be included in the proposed increase to be voted for school purposes. In fact, unless it is so included, or supplemental estimates made, no money could be lawfully expended therefor. One election would be sufficient and there is no occasion for requiring a separate vote on the particular item for physical education.

We conclude that section 10441, C. O. S. 1921, attempting to authorize a continuing increased levy from year to year without an annual election authorizing the same is in conflict with the constitutional provision and void.

The judgment of the Court of Tax Review is therefore affirmed.

LESTER, C. J., CLARK, V. C. J., and HEFNER, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. CULLISON, J., absent.