COLUMBIA INSURANCE CO. v. BOARD OF EDUCATION OF JOINT SCHOOL DIST. NO. 1, COUNTIES OF PONTOTOC, JOHNSTON, AND COAL.

No. 27420. Jan. 10, 1939.

Rehearing Denied June 13, 1939.

Application for Leave to File Second Petition for Rehearing Denied June 27, 1939.

Rittenhouse, Webster & Rittenhouse, for plaintiff in error.

Brunson & Brunson, for defendant in error.

OSBORN, C. J. This action was instituted in the district court of Pontotoc county by J. E. Morrison, W. H. Holland, and W. B. Ivey, composing the board of education of joint school district No. 1 (in Pontotoc,

Coal, and Johnston counties), against Columbia Insurance Company on two policies of fire insurance. The cause was tried to a jury, and a verdict was returned in favor of plaintiff. From a judgment thereon, defendant has appealed. The parties will be referred to as they appeared in the trial court.

The evidence discloses that during the month of April, 1934, the plaintiffs were desirous of procuring some fire insurance upon the school property. The funds provided for the fiscal year 1933-34 for payment of premiums for fire insurance had been exhausted. The board had prepared its estimate for the fiscal year 1934-35, in which it requested an appropriation sufficient to pay an annual premium upon the policies. The teacher of the school, one Cole Underhill, informed the board that he believed he could secure the insurance on credit, and was authorized by the board to do so. Underhill solicited the insurance from the Howard-Thompson Agency at Ada, which was a general agency of the defendant company, and made arrangements through said agency for the procurement of the insurance on credit. On April 11, 1934, two policies were issued, one on the schoolhouse and contents for $2,100, and one on the teacherage for $400. Each was for a term of one year.

The policies were delivered to Underhill, who in turn delivered them to Mr. Ivey, the clerk of the board. The policies were examined by two members of the board and accepted by them. On May 7, 1934, the schoolhouse, the teacherage, and the contents of both buildings were totally destroyed by fire. Proof of loss was furnished to defendant. On October 17, 1934, the board tendered to defendant a warrant in the sum of $58.92, the amount of the premiums on both policies, which tender was refused. Upon the failure of defendant to indemnify the school district for the loss sustained by the fire, this action was instituted.

For reversal of the judgment it is urged, first, that since the appropriation was exhausted for the fiscal year in which the policies were issued and no funds were on hand at that time for payment of the premiums, the contracts were violative of section 26, art. 10, of the Constitution and section 5955, O. S. 1931 (62 Okla. Stat. Ann. sec. 479), prohibiting the incurring of any indebtedness in excess of the income and revenue provided for the fiscal year, and are null and void. A number of authorities are cited in the brief construing said section of the Constitution, but each of these cases involved an attempt to enforce a liability against a municipality upon a contract entered into in violation of said constitutional provision.

Plaintiffs insist that the contracts do not violate the above-cited constitutional and statutory provisions, since an estimate had been made and subsequently an appropriation was provided for payment in full of the premiums, and that said funds should be treated as "on hand" when the insurance contracts were entered into. The various authorities relied upon to establish this proposition are not in point. In this case the insurance policies became effective approximately three months before the beginning of the fiscal year in which the funds were provided for payment of premiums. It is obvious that premiums on policies covering the school property during the year in which funds were properly provided would be a valid charge against the district. The loss in this case, however, occurred before the beginning of such fiscal year. Accordingly, we will treat the premiums on the insurance for the period the same was in force prior to the beginning of the fiscal year 1934-35 as an invalid charge against the district by virtue of the constitutional and statutory provisions hereinabove referred to.

The exact question here presented has not been before this court, but in our former decisons we find announced the principles which are controlling.

In the case of Fairbanks-Morse Co. v. City of Geary, 59 Okla. 22, 157 P. 720, this court denied to plaintiff the right to recover, by replevin, certain machinery furnished to the city under a contract violative of the above cited constitutional and statutory provisions, for the reason that the contract was illegal, and that the court would not "use its power, or lend its offices to aid them, but will leave them where it finds them."

In the case of Board of Commissioners v. Western Bank & Office Supply Co., 122 Okla. 244, 254 P. 741, plaintiff entered into contracts with the board of county commissioners of McCurtain county to furnish certain furniture, fixtures, and supplies to the county. The contracts were violative of the above-cited constitutional and statutory provisions. It was sought to recover a judgment against the county for the value of the goods sold and in the alternative for a recovery of the goods. It was held that plaintiff was not entitled to a judgment against the county, nor to a return of the property. It was therein said:

294

"* * * It is so fundamental that it needs no citation to establish it—that all persons dealing with municipalities do so at their own peril. They are charged with knowledge of the limitations placed by law upon the authority of the officers of the same. Under the law of this state, any contract made as in the instant case, where the revenue has not already been provided for, paying the same during the fiscal year in which the contract is made, is absolutely void; that is, void to the extent that the courts will not entertain any alleged cause of action to render a judgment against the municipality, and the only remedy which the statute provides or permits is an action against the officers contracting such pretended indebtedness. This remedy against the officers is by the law written into every such contract, and is 'expressio unius est exclusio alterius,' so far as resorting to any other remedy. The purpose of this provision of the statute is both penal and remedial. It is in the nature of a penalty against the officers for the purpose of deterring them from entering into such pretended agreements. It is in the nature of a remedy in that it permits the person furnishing such goods, wares, merchandise, or labor to recover through the courts solely against the officers so prostituting their official authority.

"As said supra, section 8639 makes the attempt to enter into such contract a crime. Persons who have goods, wares or merchandise, or labor for sale to municipalities are charged with knowledge of how far the officers can go. If, in their zeal to vend their wares, they pay no attention to the limitation of the officials with whom they deal, they do so at the risk of their ability to recover from the officers or of donating what they deliver to such municipality, under such contracts, and remedy in the courts to recover in any wise, save and except against the officers who entered into such an agreement, is denied. * * *"

The doctrine so announced was followed in the case of J. B. Klein Iron & Foundry Co. v. Board of County Commissioners of Canadian County, 178 Okla. 72, 61 P.2d 1055, wherein it was sought to recover from the county, by replevin, certain materials furnished to the county under a contract violative of the above-cited provisions of the Constitution and statutes. It was pointed out that the contract was void only as to the municipality.

Although the facts in these cases are dissimilar to the facts involved herein, the principle is the same. The issue of invalidity of the contract is raised by the defendant insurance company, but by raising such issue said defendant attempts to escape a contractual liability, voluntarily assumed, and in this respect seeks affirmative relief through the law. It assumed said contractual liability with full knowledge of the law and the facts. If any part of the premiums charged for the policies may not be collected from plaintiff school district, defendant's sole remedy is to proceed against the members of the board, by civil action, for the collection of such amounts. No other remedy is available. It may not escape its contractual liability by asserting the invalidity of the contracts. They are invalid only as to the school district.

Defendant further contends that the policies are void for lack of mutuality. In the light of the above cited authorities, it is obvious that the contention is without merit.

It is also sought to reverse the judgment of the trial court on the ground that "there was no regular or special meeting of the school board at which the purchase of said policies was authorized or approved," and the purported contracts of insurance sued on were unenforceable and void. The evidence is to the effect that all three members of the board were present and authorized Underhill, the teacher, to procure the insurance. It is also shown that two members of the board examined and approved the policies after they were delivered. The fact that no written minutes were made regarding the transaction of this business does not operate to invalidate these contracts.

Judgment affirmed.

WELCH, GIBSON, HURST, and DANNER, JJ., concur.

On Motion for Rehearing.

DANNER, J. (dissenting on rehearing). Due to the importance of the question I desire to point out the respects in which I believe the majority to have erred.

First, however, let us observe the following: It is now to the advantage of every municipality in this state to violate section 26 of article 10 of the Constitution. If they are sued on contracts which are in violation thereof, they may correctly defend by reason of said illegality, while if they choose to take the opposite role, that of plaintiff, and sue on said contracts, they may admit their failure to perform their part thereof, and that they could not be made to perform, and still they win. In the former case they prevail because the courts enforce the Constitution, in the latter case because the courts enforce their violation of the Constitution.

The majority opinion is directly in con-

**flict with the theory of the decisions which it cites.** The theory of those decisions is the well-settled rule that courts will not aid **either** party in the enforcement of an illegal contract. The party who **sues** on such a contract, seeking to enforce it, is always the party who is denied the aid of the court. In those cases the municipalities did not sue; they defended, and of course they prevailed. Why? Because when as defendants they set up the illegality of the contract they were seeking to enforce the provisions of the Constitution. Here the municipality is not setting up said illegality, it is **itself** suing on the unlawful contract. There is all the difference in the world between enforcement of the provisions of the Constitution **and enforcement** of a violation of the Constitution. The cases cited by the majority opinion enforced the provisions of the Constitution; the majority opinion does not do that, it does the reverse. Remember the positions of the parties. It must be emphasized that when a contract is "enforced" which violates the Constitution (that is, when the plaintiff who is relying on said contract is **given judgment**—as the municipality was in this case) it is not "enforcement" of the Constitution at all, it is enforcement of a **violation** of the Constitution, which is the very reverse of the rule underlying the cases cited in the instant opinion.

It is useless to quote isolated phrases from those decisions, in aid of the holding in this case, such as that persons dealing with municipalities do so at their own peril, that they are charged with knowledge of the law, etc. In those cases, for what purpose were those statements made? Simply to show, of course, that a person entering into an illegal contract must accept the peril thereof if he attempts to enforce it. But would the court give plaintiff judgment on a gambling debt simply because the defendant debtor engaged in gambling "at his own peril," or because when he did so he was "charged with knowledge of the law"? Answer: Under the cases cited in the majority opinion, no; under the majority opinion, yes.

The serious error in said opinion is that it either misconceives or ignores the true rule. The true rule is not that a municipality must win at all events, simply because it is a municipality, nor is it any part of the rule that the **defendant** in a case of this kind is precluded from showing illegality of the contract. The true rule is that it is the party who is **relying** upon the contract who suffers, regardless of which party it is. The rule was applied in the cases relied upon, it is true, against the individual and in favor of

the municipality, but it was not because he was an individual, it was because he was **plaintiff**, because he was attempting to enforce the contract. Notice the following from the Fairbanks-Morse Company Case, cited by the majority opinion, and observe the impartial plural application of the rule, which certainly means **either** of the parties, depending upon which is seeking enforcement of such a contract (59 Okla. 26, 157 P. 724):

"It seems to be too well settled to require citation of authorities or further argument to maintain the rule that, where parties enter into an illegal contract, the court will not use its power, or lend its offices to aid **them**, but will leave **them** where it finds them."

Is it not clear that if the municipality had been **plaintiff** in that case the court would have denied it relief, under the above quotation, and would have left the parties to the contract where it found them? It so happened that it was the other party, not the municipality, which was asking for relief. Here we have a different situation, the municipality is not urging the Constitution as a defense, but is using its own violation thereof as a sword of aggression. Surely the above quotation must now be modified, for it is opposite to the doctrine of this case.

Similarly, in the Board of Commissioners, etc., v. Western Bank & Office Supply Company Case, also relied upon by the majority opinion, it was the **plaintiff** who lost; not because the plaintiff was a non-municipal entity, but because it was the plaintiff who was attempting to **enforce** a contract in violation of the Constitution, just as the plaintiff municipality in this case was doing. Suppose, in that case, the situation had been reversed. Just ponder this: Suppose that the office supply company had not delivered all of the furniture and had refused to deliver more, due to absence of payment or appropriation, and the county commissioners had filed suit to compel performance of the contract, or damages. Would anyone say that the company would be required to supply further furniture? Certainly not, and yet in principle that is this very case.

But it is said that that is not this case: that here the policy had been delivered and that this is only an action on the policy. That attempted distinction is wholly without substance. According to the same reasoning, the maker of a note given in settlement of a gambling debt could not assert as against the plaintiff payee the invalidity thereof, for it would be an action only on the note, not on the contract. We all know that the note is only the **evidence** of the contract or the obligation flowing therefrom, just as we know

here that the policy is only the evidence of the obligation flowing from and constituting a part of the illegal contract. And, secondly, the rule is well settled, as stated by us in Missouri Fidelity & Casualty Co. v. Scott & Scott, 72 Okla. 59, 178 P. 122, that courts not only refuse to enforce illegal contracts, but they also refuse to enforce alleged rights springing **from** such contracts. Another instance was Smithson v. Love, 132 Okla. 214, 270 P. 23, where we held that denying recovery on a note and to foreclose a mortgage growing out of a wager was proper. And another: Hamilton v. Cash, 185 Okla. 249, 91 P.2d 80, where we said:

"A contract founded on an illegal consideration or which is made for the purpose of furthering any matter or thing prohibited by statute, or to aid or assist any party therein, is void.

"Where an act is absolutely prohibited by statute or is contrary to the public policy of the state, **all notes or contracts** given in furtherance of said act are null and void."

In the Klein Iron & Foundry Company Case, also cited by the majority opinion, the municipality again was defendant, not plaintiff, as in this case. That case quoted certain language from the Western Bank & Office Supply Company Case, supra, wherein section 8638, C. O. S. 1921, was being construed, and where it was said purely by way of dictum and as applied to the facts of that particular case, that the contract was void only "**as to**" the municipality. One searches the opinion in vain for any such holding as **this** case attributes to it. It is very apparent that in that particular case the contract was void "only" **as to** the municipality, because the municipality was defending, not suing, and the municipality did keep the property. The following language from that opinion indicates what the conclusion of the court would necessarily have been had the municipality been plaintiff instead of defendant:

"It is clearly the purpose of the said constitutional provision and the said statutes that the courts will administer **no** remedy to **any** party to a contract made in violation of the debt limitation."

And let us see what was said in the Klein Case (178 Okla. 74, 61 P.2d 1058):

"**No** man can **come into** a court of justice to seek the **assistance** of the law, who **founds** his claim upon a contravention of the law."

Who came into the court of justice in the present case, seeking the "assistance" of the law? Obviously enough, the plaintiff. And did the plaintiff "found its claim" upon a contravention of the law? Yes, even the majority opinion admits so.

But at this point the majority opinion makes a very surprising statement. It says that when the defendant insurance company raised the issue of invalidity of the contract, it was thereby asking for affirmative relief. This is a very novel conception of the term "affirmative relief". If the statement is true, then it is always impossible for the defendant successfully to assert illegality of contract, for he thereby is asking for affirmative relief; we have always been wrong in entertaining the plea of illegality at all, for the question could not be raised by the defendant, no one could raise it but the plaintiff, who obviously wouldn't do so. In Smithson v. Love, supra, the plaintiff should have been given judgment on the note for a gambling debt, because the defendant in simply apprising the court of the nature of the consideration was thereby asking for affirmative relief. A sues B because the latter refused to get a divorce, or refused to bribe an official, or refused to rob a bank, or refused to prevent competition in bidding, or refused to perform some other contract of the parties in violation of law. A must prevail, because B in merely pleading illegality of the contract as a simple defense thereto is asking for affirmative relief. The statement is so obviously incorrect that resort to adjudicated definitions is not justified. Yet the entire opinion, when analyzed fairly, is based almost entirely upon this single incorrect assumption.

It is said that the contract is invalid "only as to" the school district. Reasons for the statement, however, are significantly lacking. It is nothing but an abstract statement. There should be furnished some rational **theory** or **reason** or **basis** for such a statement. If it is meant, by that, to say that section 26 of article 10 of our Constitution is binding only upon individuals dealing with municipalities, and is not binding upon municipalities, some interesting results are to be expected, particularly in the Court of Tax Review. We might remember that this part of the section is not the entire section, and that if one part of the section is not binding upon municipalities, then no other part of the section is binding upon them, including that part which forbids, even with the assent of three-fifths of the voters of the municipality, any indebtedness exceeding 5 per centum of the valuation of the taxable property therein. In that case (that is, if it is not binding on the municipality) the voters by a three-fifths majority may tax themselves up to 100 per centum of the taxable property's valuation, which is absurd. If we are now to hold that the

section is not binding upon municipalities, we should overrule Faught v. City of Sapulpa, 145 Okla. 164, 292 P. 15, wherein we said that this section may not be disregarded or ignored by public officials, the Legislature, the courts or the people. And we should overrule Board of Commissioners of Carter County v. First National Bank of Berwyn, 159 Okla. 283, 15 P.2d 6, construing a statute in aid of this section, wherein we said that it is binding on county officials and court officials, as well as others. We should expressly overrule Eaton v. St. Louis & S. F. Ry. Co., 122 Okla. 143, 251 P. 1032, where we said that this section applies to the people as well as to their fiscal and tax levying agents. Furthermore, if the section is not binding upon the municipality and its officers, it is difficult to understand why the municipal officials should be subject to criminal prosecution, fine and removal from office for violating it, as is provided in section 5956, O. S. 1931, 62 Okla. St. Ann. sec. 480.

Thus a fair analysis reveals the opinion has no basis at all unless it is the arbitrary holding that while part of the section is binding upon municipalities the remainder of it is not. Since we know the latter to be an impossible construction of any constitutional or statutory provision, truth and frankness lead inevitably to the conclusion that the holding is entirely without legal foundation, leaving the plaintiff to violate the Constitution at will, to use that violation as an aggressive tool of unjust enrichment and to use, likewise, the courts, who are sworn to uphold the Constitution, as an ally.

No plaintiff should be wholly exempted from the provisions of law. Can it be that a school district is endowed with some magical characteristic which lifts it above and beyond the law applicable to other plaintiffs in general who are denied the aid of the courts in enforcing unlawful contracts? Section 9459, O. S. 1931, 15 Okla. St. Ann. sec. 151, provides that all contracts, whether public or private, are to be interpreted by the same rules, except as otherwise provided by law, and it is not provided, in any place in our laws, that a municipality, any more than any other plaintiff, is empowered to transform its violation of law into a cause of action.

That the school district, as well as the defendant company, did violate both the Constitution and the statutes is of course admitted. And that the contract was not merely voidable, but was absolutely un-lawful and void, is likewise true. Section 9486, O. S. 1931, 15 Okla. St. Ann. sec. 211. Therefore, for the first time in this state, that which we have always said could not be done has been done, namely, a plaintiff has come into court, seeking the affirmative assistance of the court in enforcing its own violation of the highest law of the state, and the court has lent its aid in enforcement of the violation of that law, and, moreover, its practical encouragement to untold future violations thereof.

Having pointed out the foregoing, I shall set forth some of the reasons why in my opinion the judgment should be reversed. Of course, section 26, article 10, was violated and the contract upon which the plaintiff sued was an illegal contract. That is admitted by the majority opinion. The debt was incurred, the policy was issued and the schoolhouse burned, all in the same fiscal year. Therefore the fact that the school district tendered the company a warrant out of the funds of the succeeding fiscal year is of course immaterial, and does not change the case. Garvin County v. Lindsay Bridge Co., 32 Okla. 784, 124 P. 324; School District No. 2, etc., v. Gossett, 140 Okla. 243, 283 P. 249; Haskins & Sells v. Oklahoma City, 36 Okla. 57, 126 P. 204. The outstanding principle applying here is that the courts will not aid either party in the enforcement of a contract which is illegal or against public policy. Nor will they enforce alleged rights springing directly from it. Missouri Fidelity & Casualty Co. v. Scott & Scott, 72 Okla. 59, 178 P. 122. This is because the law will not sanction or encourage its own violation. But in applying this principle the courts have not heretofore been partial, for if either party seeks enforcement of such an agreement or anything dependent upon it, the courts will refuse their assistance and will leave both parties where they found them. Citizens Nat. Bank of Chickasha v. Mitchell, 24 Okla. 488, 103 P. 720, 20 Ann. Cas. 371; see the many cases at 4 Okla. Dig. (West) 389, Key No. 138.

Yet while the courts will not aid either party to enforce such a contract, they do permit the opposite party to show in defense the illegality thereof, or the violation of public policy contemplated therein. McLain v. Oklahoma Cotton Growers' Ass'n, 125 Okla. 264, 258 P. 269. The reason for the difference in the treatment of the two parties is understood when it is realized that the law views the parties with an eye to its own maintenance and respect, rather than being in-

fluenced by the individual equities. Thus the defendant may be as culpable as the plaintiff, yet the court will receive and reward his plea, not because his conduct deserves it, but because the refusal of such plea will draw the court itself into sanction and encouragement of the law's violation, by enforcing a contract based upon said violation. As put by Pollock in his work on Contracts (Wald's Ed.):

"The principle proper in this class of cases is that persons who have entered into dealings forbidden by law must not expect any assistance from the law, save so far as the simple refusal to enforce such an agreement is unavoidably beneficial to the party sued upon it."

The foregoing is why knowledge of the invalidity of the agreement, on the part of defendant's agent at the time when he entered into the contract, does not preclude the defendant from asserting the illegality thereof. It may be observed in passing that in virtually all cases arising under this section of our Constitution both parties to the contract had either actual or constructive knowledge of the illegality of the contract at the time of its execution, yet the defendant has always been permitted to defend on the ground under consideration.

One is easily tempted, and in fact inclined, to be led astray from the true legal principles governing cases of this kind, by overlooking the fact that such cases are controlled by the positive mandates and inhibitions of the Constitution and statutes in aid thereof, rather than the equities existing between the parties. The well-settled rule is that in deciding actions affected by *section 26, of article 10, of the Constitution,* or affected by any constitutional provision, the principles of equity (such as estoppel) are not applicable. Edwards v. School District, 117 Okla. 269, 235 P. 611; Protest of Carter Oil Co., 148 Okla. 1, 296 P. 485; Excise Board of Carter County v. Chicago, R. I. & P. Ry. Co., 152 Okla. 120, 3 P.2d 1037; Fairbanks-Morse Co. v. City of Geary, 59 Okla. 22, 157 P. 720. We have extended this principle even further than to constitutional provisions, having recently held in Parks et al. v. Lyons, 183 Okla. 529, 83 P.2d 573, that equitable considerations do not come into play on a subject governed by a valid statute.

While it is true that the municipality is the party which more often benefits by this provision of the Constitution, it is but fair and just that when the same provision works to the detriment of the municipality the courts should not hesitate in the interests of the Constitution to announce the result which the law demands,—which, putting it in a more homely manner, is that enforcement of the Constitution should not be made dependent upon the question of whose ox is gored.

Most of the cases from other jurisdictions involve situations where the individual has **accepted and retained** the fruits of his ultra vires contract with the municipality and then refuses to perform, or contracts which were irregular but not ultra vires or unlawful. Some of them permit him to assert the defense, and some do not. But even those which deny the right to the defense of "ultra vires" make it clear, at the same time, that if the contract were actually illegal and unlawful, as in the instant case, as distinguished from being merely irregular, they would hold to the contrary. As an illustration, the following from St. Louis v. Davidson, 102 Mo. 149, 14 S. W. 825, 22 Am. St. Rep. 764:

"In ruling thus, we give no sanction to a municipal corporation leaving the narrow pathway marked out by its charter, nor do we intimate that we would enforce an ultra vires contract, * * * we merely hold that good morals and even-handed justice demand that the defendant should disgorge."

The distinction noted just above is apparent in the following quotation from 19 R. C. L. 1062:

"It has frequently been held that when a municipal corporation has entered into **and performed** a contract which, although ultra vires, was not **prohibited by law,** the other party to the contract cannot set up the plea of ultra vires to escape liability and to **retain the benefits received under the contract.**"

In the instant case, however, (1) the municipal corporation had not performed, had not paid the debt, (2) the contract was prohibited by law, (3) the defendant did not receive any benefits under the contract, and never could have maintained an action to receive any, and (4) the contract is not merely ultra vires but is illegal and unlawful. It is said in 3 McQuillin on Municipal Corporations (2d Ed.) page 816, that the terms "ultra vires" and "illegality" are not synonymous, but represent different and distinct ideas, and while a contract may have both such defects, it may also have one without the other. In the same work, at pages 1001 and 1002, distinctions are made between (1) those cases where the individual has received the benefits of the contract, or where the contract was not ultra

vires in the strict sense but was merely irregularly made; and (2) cases, on the other hand, wherein the contract was wholly beyond the municipality's authority, or illegal.

In 44 C. J. 146, it is said:

"The contractor may set up in defense of an action against him by the city founded on an alleged breach of contract facts to establish that the contract, as alleged, was never made, or was ultra vires, or in violation of law, or, if made, was never breached by him."

The applicable rule is stated in City Council of Montgomery v. Wetumpka Plank-Road Co., 31 Ala. 76, 88, in speaking of the very doctrine which this court is now fostering:

"**If this doctrine be established, then corporations, no matter how limited their powers, may make themselves omnipotent.** They have only to induce persons to contract with them beyond the scope of their powers, and **their very usurpations** have the effect of conferring powers on them which the Legislature· have withheld. **A proposition so erroneous can scarcely need argument to overturn it.**"

We have frequently been called upon to provide exceptions to section 26, article 10, of the Constitution, and the statutes enacted with a view of guaranteeing enforcement thereof. It is a matter of judicial history in this state that such attempts have in the main proved futile. The section is strictly construed and applied. Boardman v. Board of Commissioners, 136 Okla. 85, 276 P. 474. When we have so frequently said that all parties to such contracts are charged with notice of the law, we have never heretofore inferred or even intimated any exemption of the municipality itself, as represented by its proper officers. It so happens that in virtually all of those cases it was the individual, and not the municipality, who was seeking enforcement of the contract. Here the situation is the reverse, but it is impossible to correctly hold that the individual is bound by the law but the municipality is not, and may disregard it. In fact, this would be in conflict with Board of Commissioners v. First Nat. Bank and Eaton v. St. L.-S. F. Ry. Co., both supra.

Nor can this provision of the Constitution, or our own prior statements concerning it, be nullified by the simple statement that the section was enacted "for the benefit" of the municipality, and that therefore the municipality should be permitted to base a cause of action on a contract which is admittedly violative thereof. It should again be remembered that the municipality is suing, not defending. If the section was adopted for the benefit of the municipality, it was intended that the benefit should result from enforcement of the section, not from its violation. Certainly it was never intended that the municipality should use its own violation of the section as a means of acquiring said "benefit." While taking advantage of the violation of Constitutions and statutes is permitted by way of defense, such violation is never permitted as a weapon of aggression. True it is that the section was· adopted for the benefit of the municipality, and it is enforced for the benefit of the municipality, not violated for the benefit of the municipality. To say that it was adopted for the benefit of the municipality is far from saying that the courts will permit the municipality aggressively to "benefit," that is, to acquire, by **violating** it. If it had been the other way around, if the fire insurance company had sued the municipality for the premium, the municipality could have defended and thus benefited by use of the section, but in that case the municipality would have been seeking **enforcement** of the section, not ·violation. In order to preserve the benefit intended to inure to municipalities by this section, it is not necessary that this court go to the extent of actually encouraging municipalities to violate it, by laying down a rule which pays no heed to whether the cause of action is based upon an enforcement or violation of the Constitution. The court is thus in effect saying to the municipalities of this state:

"Enter into such contracts. If the other party sues you, you can defend by showing that the contract was in violation of the Constitution. But if you sue the other party, you will win anyway, for since this section was enacted for your benefit, the court must at all events see to it that you do 'benefit', regardless of whether you base your action upon enforcement or violation of it."

This court should not subscribe to such reasoning. He for whose benefit a law is enacted should himself observe it, and he, of all people, should not base a **cause of action** on his own violation of that same law. And so when we say that the law was enacted for the municipality's benefit, we are not through with the problem. There yet remains the question of whether it may arm itself with its own violation of that law, and demand affirmative relief based upon the product of a violation of that which, only when rightly used, was intended for its benefit.

Safety lies with our continued strict

adherence to section 26 of article 10 of the Constitution. The fiscal affairs and management of the thousands of municipalities in this state would be better served and those municipalities themselves be more benefited, by maintaining that construction of this provision which has long been the law in this jurisdiction, namely, that said section is in a real and practical sense binding upon the municipalities, their officials and the people composing said subdivision, as stated in our prior decisions, cited hereinbefore. Certainly this would be the better course, rather than to provide new and dangerous exceptions which are merely loopholes through which municipal officials may pass to and fro at their will, violating or observing the law as will best suit their immediate purposes.

The fact that the insurance company could have collected the premium from the officers individually, or from their bondsmen, under the provisions of section 5955, O. S. 1931, 62 Okla. St. Ann. sec. 479, supra, is entirely beside the question. There is no connection between that and the illegality of the transaction under consideration. The insurance company did not collect from the officers. Neither its failure to collect from the officers under and by virtue of said section, or from their bondsmen, nor its collection from them, if the company had collected, would relate back and render this transaction legal which the district is suing upon. In fact, the section itself pronounces it illegal, and it is only when such a transaction is illegal that the officials and their bondsmen are personally liable at all. This action is by the district, not by the officers individually or their bondsmen. The question here is not whether the defendant could have recovered an amount of money from a source other than the school district which would have equaled the premium; the question is the legality or enforceability of the very contract which is sued upon, and that contract, whatever we may say about the personal liability of the officials, is indisputably illegal, unlawful and absolutely void. It is only by reason of that illegality and unenforceability that the officials are liable at all. Therefore, in order to say that the company could collect the premium from the officials, it is first necessary to say that the contract between the school district and the officials was illegal. That contract being illegal, it is unenforceable, and the personal liability of the officials obviously does not cure its illegality. The fact still remains that section 26 of article 10 was violated and remains violated in spite of the fact that by statute the officers are personally liable.

But there is still another reason, separate and distinct from constitutional questions, why the contract should not be enforced. Since the company received no consideration for its undertaking, nor could ever legally have maintained any action or enforced any claim therefor against the district, **the contract was wholly lacking in consideration and mutuality.** It is one of the fundamentals of law that if one party to a contract is not bound, then the other is not bound. Certainly it cannot be said that the school district was bound or could have been made to pay the premium; and the foregoing rule of contracts is as applicable to the school district as it is to an individual. Section 9459, O. S. 1931, 15 Okla. St. Ann. sec. 151.

By the terms of section 9390, O. S. 1931, 15 Okla. St. Ann. sec. 2, it is essential to the existence of a contract that there be a sufficient cause or consideration. "It is fundamental there must be a consideration for every contract" (Gunn v. Fryberger, 71 Okla. 170, 176 P. 248), and "mutuality as applied to a contract, means consideration" (Ash v. Chas. F. Noble Oil & Gas Co., 96 Okla. 211, 223 P. 175). "The court will not compel one party to a contract to perform it and excuse performance by the other." Kittle Mfg. Co. v. Davis, 8 Cal. App.2d 504, 47 P.2d 1089. The statement made in City of Portland v. Portland Bituminous Paving & Improvement Co., supra (syllabus, L. R. A.) to the effect that "a contract invalid as to one of the parties is invalid as to the other" is a correct general statement. It is a most unconscionable thing to require one party to a contract to perform while at the same time admitting that the other party could never under any circumstances be made to perform.

The law of contracts as applied to this case is plain and clear. Furthermore, the necessity for stability and maintenance of the Constitution, the good ends which are sought to be reached by the provision thereof controlling this case, and the evil practices which it was thought would be prevented thereby, have frequently been discussed and emphasized in our opinions. Heeding those things, it is clearly our duty to reverse this judgment and remand the cause, with directions to enter judgment for the defendant. Instead of so doing, the majority opinion affirms the judgment on no legally acceptable theory at all, in direct

conflict with the basic rule underlying the very cases which it cites, not to mention numerous other decisions of this court.

In brief, the majority opinion relies on the rule laid down in Western Bank & Office Supply Co. v. Board of County Commissioners and Klein v. Board of County Commissioners, supra, wherein it states that where a contract is unlawful the court will not enforce it, but will leave the parties in the same situation as found.

I agree with that rule. To apply that rule logically to this case would leave the school district in possession of the policy and the insurance company with no remedy against the school board. But the majority opinion has not left the parties as it found them; it has sought to enforce the unlawful contract and has rendered judgment thereon. In Western Bank & Office Supply Co. v. Board of County Commissioners and Klein v. Board of County Commissioners, the court refused to render any judgment; but in this case the majority opinion does not follow that rule but proceeds to render judgment in favor of one party and against the other, on an unlawful contract, instead of leaving the parties where it found them.

I therefore dissent to the majority opinion.